# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1729

_____

Vincent A. Beacom

*Plaintiff - Appellant*

v.

Oracle America, Inc.

*Defendant - Appellee*

------------------------------

Securities and Exchange Commission

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 19, 2015
Filed: June 6, 2016

_____

Before SMITH, BYE, and BENTON, Circuit Judges.[1]

_____

---

[1]This opinion is being filed by Judge Benton and Judge Smith pursuant to Eighth Circuit Rule 47E.

BENTON, Circuit Judge.

Vincent A. Beacom sued Oracle America, Inc., alleging it violated Sarbanes-Oxley and Dodd-Frank by firing him in retaliation for reporting that Oracle was falsely projecting sales revenues. The district court[1] granted summary judgment to Oracle. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Oracle is a publically-traded international corporation in the computer software and hardware business. Its software business is divided into seven global business units, including the Retail Global Business Unit, all of which are managed by a single Executive Vice President. The Retail Global Business Unit (RGBU) is further divided into three regions – North and South America (the Americas division); Europe, the Middle East, and Africa; and the Asia-Pacific – all of which are run by a General Manager. Robert K. Weiler was Executive Vice President of all global business units, Michael Webster was General Manager of the RGBU, and Beacom was Vice President of Sales in the Americas division of the RGBU.

The RGBU comprises a small portion of Oracle's business, generating only 0.4% of Oracle's $31 billion in revenue. RGBU Americas generated only 0.19% of Oracle's revenue.

When Webster took over as General Manager of the RGBU in February 2011, he changed the method for projecting quarterly sales revenues. Previously, Oracle used a bottom-up forecasting process. Sales representatives entered potential deals into a database, indicating the deal's value and the likelihood of closing before the end

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

-2-

of the quarter. The regional managers then adjusted the forecasts. Oracle compiled this information and created projections using an automated program with guidelines and criteria. Deals not meeting the criteria—such as those without a concrete close plan or an implementation plan—were "best case" or "upside" deals, and not recorded as projected revenue.

Webster shifted sales revenue projections from bottom-up to top-down. Using information contained in the sales pipeline—that is, deals already in the works—and historical conversion rates, Webster established the forecasting goals for each region. This forecasting method resulted in higher projections than under Oracle's traditional GCM method. For instance, in the first quarter of fiscal year 2012 (June 1, 2011, to August 31, 2011), Webster projected $16.4 million in sales for RGBU Americas; the GCM method would have projected $12.9 million. Webster's superior, Bob Weiler, revised Webster's projections based on his experience and discretion.

The first three quarters of 2012, RGBU Americas overprojected its revenues. In Q1, it projected $16.4 million, but delivered about $13 million. In Q2, it projected $27 million, but delivered about $20 million. In Q3, it projected $25 million, but delivered about $15 million. Beacom alleges that as a result of the missed projections and the discrepancy between Webster's projections and the GCM model, Webster directed salespersons at RGBU Americas to record deals that did not meet the GCM criteria—such as deals only considered "best case" under GCM—so the GCM model would closer reflect his projections.

Beacom says he repeatedly voiced concerns to Webster about the new projections method, beginning as early as the second quarter. Beacom testified he was concerned that "the wrong, incorrect, non-fact-based expectations were being sent up through the management chains, which would be the foundation of an expectation sent to" Wall Street, and that these inaccurate projections contributed to Oracle's decline in stock value.

However, in each quarter, RGBU Americas was only a few sales away from meeting projections. In Q1, for example, Beacom told Webster he could meet projections if he closed deals on Discount Tire, Nordstrom, Toys R Us, and Academy. Discount Tire alone was forecast as a $4 million deal. Beacom did not close the deal, and RGBU America missed its projection by $4 million. In Q2, Beacom similarly reassured Webster he could meet the projections, even telling his daughter the projections were "tight but doable."

In January 2012, Beacom and Webster attended a conference in New York City. Webster told Beacom he had increased his projection from $25 million to $30 million. Beacom then "challenged" Webster's practice of "intentionally forecasting false revenue commitments." Soon after, Beacom met with HR Representative Jennifer Olson to express concerns that Webster's forecasts were setting the wrong expectation for shareholders.

Weiler and Webster decided to fire Beacom in March (to avoid interrupting Oracle's fiscal quarter). On March 5, 2012, Oracle terminated Beacom on the basis of poor performance and insubordination.

Beacom sued Oracle under the Sarbanes-Oxley Act and the Dodd-Frank Wall Street Reform and Consumer Protection Act, alleging Oracle wrongly terminated him in retaliation for his complaints about Webster's revenue projections. The district court granted Oracle's motions for summary judgment. Beacom appeals.

II.

This court reviews de novo a grant of summary judgment. *Pedersen v. Bio-Med. Applications of Minnesota*, 775 F.3d 1049, 1053 (8th Cir. 2015). Summary judgment is proper if the moving party proves "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**.

## A.

Sarbanes-Oxley prohibits a publicly traded company from discharging an employee in retaliation for providing information to a supervisor or another person in the company with investigative authority about "any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." **18 U.S.C. § 1514A(a)(1)(C)**.

A claim of retaliation proceeds under a burden-shifting framework. First, the plaintiff must prove four elements by a preponderance of the evidence: (1) he engaged in protected activity; (2) his employer knew he engaged in protected activity; (3) he suffered an adverse employment action; and (4) the protected activity was a contributing factor in the adverse action. *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013). Then, the employer may prove by clear and convincing evidence that it would have taken the same adverse action even if the employee had not engaged in the protected activity. *Rhinehimer v. U.S. Bancorp Inves., Inc.*, 787 F.3d 797, 805 (6th Cir.).

## 1.

Sarbanes-Oxley requires the employee to hold a reasonable belief that the employer's conduct amounts to fraud against the shareholders. The reasonable belief standard has both an objective and a subjective component. *Rhinehimer*, 787 F.3d at 811. The employee must subjectively believe the employer's conduct violated a law relating to fraud against shareholders, and the employee's belief must be objectively reasonable. *Id.*

The Administrative Review Board (ARB) of the Department of Labor, which adjudicates Sarbanes-Oxley whistleblower claims, first considered the objective component of the "reasonable belief" standard in 2006. *Platone v. FLYI, Inc.*, ARB No. 04-154, 2006 WL 3246910 (ARB Sept. 29, 2006). In *Platone*, the ARB held that to qualify as protected conduct, the employee's complaint must (1) "definitively and specifically" relate to one of the categories of fraud or securities violations listed under Sarbanes-Oxley's whistleblower statute, 18 U.S.C. § 1514A(a)(1); and (2) "approximate . . . the basic elements" of the fraud or securities violation to which the complaint relates. *Id.* at \*8, *adopted by Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996-97 (9th Cir. 2009); *Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 477 (5th Cir. 2008). *See also Day v. Staples, Inc.*, 555 F.3d 42, 54 n.8 (1st Cir. 2009).

In 2011, however, the ARB rejected the *Platone* standard. *Sylvester v. Parexel Int'l LLC*, ARB No. 07-123, 2011 WL 2165854, at \*12 (ARB May 25, 2011) (en banc). Instead, the ARB held that to satisfy the objective component of the "reasonable belief" standard, the employee must simply prove that a reasonable person in the same factual circumstances with the same training and experience would believe that the employer violated securities laws. *Id.* at \*11-12 (noting that the Senate Report indicated Congress's intent to impose "the normal reasonable person standard"). Under the new *Sylvester* standard, an employee's mistaken belief may still be objectively reasonable. *Id.* at \*13.

No court has rejected the *Sylvester* standard. The Second, Third, and Sixth Circuits have deferred to the *Sylvester* standard, rejecting *Platone*'s "definite and specific" standard. *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 220-21 (2d Cir. 2014); *Wiest v. Lynch*, 710 F.3d 121, 131-32 (3d Cir. 2013); *Rhinehimer*, 787 F.3d at 806. The Fourth and Tenth Circuits have addressed *Sylvester*, but found the plaintiff satisfied the more rigorous "definite and specific" standard from *Platone*. *Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 344 n.5 (4th Cir. 2014);

*Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1132 n.7 (10th Cir. 2013).

This court, joining the Second, Third, and Sixth Circuits, adopts the *Sylvester* standard.

2.

Under the *Sylvester* standard, Beacom must establish that a reasonable person in his position, with the same training and experience, would have believed Oracle was committing a securities violation. ***Rhinehimer***, 787 F.3d at 811. This fact-dependent inquiry is typically inappropriate for summary judgment. *Id.* "[T]he issue of objective reasonableness should be decided as a matter of law only when no reasonable person could have believed that the facts [known to the employee] amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." *Id.* (second alteration in original) (internal quotation marks omitted).

RGBU Americas missed its projections by no more than $10 million. Beacom—an Oracle salesperson and shareholder—would understand the predictive nature of revenue projections. And, he would understand that $10 million is a minor discrepancy to a company that annually generates billions of dollars. These facts compel the conclusion that Beacom's belief that Oracle was defrauding its investors was objectively unreasonable, even under the less-stringent *Sylvester* standard.[2]

---

[2] The summary judgment order is unclear whether it applied the *Platone* or *Sylvester* standard. Because Beacom cannot meet the lower *Sylvester* standard, any error was harmless.

The district court did not err in granting summary judgment to Oracle on the Sarbanes-Oxley claim.

B.

Dodd-Frank prohibits an employer from discharging a whistleblower for "making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002." **15 U.S.C. § 78u-6(h)(1)(A)(iii)**. Since Beacom did not make a disclosure protected under Sarbanes-Oxley, his claim under Dodd-Frank fails. The district court properly granted summary judgment for Oracle on Beacom's Dodd-Frank claim.

* * * * * * *

The judgment is affirmed.

_____