# IN THE SUPREME COURT OF CALIFORNIA

WALLEN LAWSON,

Plaintiff and Appellant,

v.

PPG ARCHITECTURAL FINISHES, INC.,

Defendant and Respondent.

S266001

Ninth Circuit
19-55802

Central District of California
8:18-cv-00705-AG-JPR

January 27, 2022

Justice Kruger authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Groban, Jenkins, and Miller*concurred.

---

\* Associate Justice of the Court of Appeal, Fourth Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

LAWSON v. PPG ARCHITECTURAL FINISHES, INC.

S266001

Opinion of the Court by Kruger, J.

The question in this case concerns the proper method for presenting and evaluating a claim of whistleblower retaliation under Labor Code section 1102.5. Since 2003, the Labor Code has prescribed a framework: Once an employee-whistleblower establishes by a preponderance of the evidence that retaliation was a contributing factor in the employee's termination, demotion, or other adverse action, the employer then bears the burden of demonstrating by clear and convincing evidence that it would have taken the same action "for legitimate, independent reasons." (Lab. Code, § 1102.6, added by Stats. 2003, ch. 484, § 3, pp. 3518–3519.) But in the years since section 1102.6 became law, some courts have persisted in instead applying a well-worn, but meaningfully different, burden-shifting framework borrowed from the United States Supreme Court's decision in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*). Noting the lack of uniformity, the United States Court of Appeals for the Ninth Circuit has asked us to decide which of these frameworks governs section 1102.5 retaliation claims. Unsurprisingly, we conclude courts should apply the framework prescribed by statute in Labor Code section 1102.6. Under the statute, employees need not satisfy the *McDonnell Douglas* test to make out a case of unlawful retaliation.

## I.

We take the facts from the Ninth Circuit's certification order. From 2015 until he was fired in 2017, plaintiff Wallen Lawson worked as a territory manager for defendant PPG Architectural Finishes, Inc. (PPG), a paint and coatings manufacturer. Lawson was responsible for stocking and merchandising PPG paint products in Lowe's home improvement stores in Southern California. PPG used two metrics to evaluate Lawson's performance: his ability to meet sales goals, and his scores on so-called market walks, during which PPG managers shadowed Lawson to evaluate his rapport with Lowe's staff and customers, among other things. Lawson's direct supervisor, Clarence Moore, attended all but the first of these market walks. On that first market walk, Lawson received the highest possible rating, but the positive evaluations did not last and his market walk scores soon took a nosedive. Lawson also frequently missed his monthly sales targets. In spring 2017, PPG placed Lawson on a performance improvement plan.

According to Lawson, that same spring, Moore began ordering him to intentionally mistint slow-selling PPG paint products — that is, to tint the paint to a shade the customer had not ordered. Lowe's would then be forced to sell the paint at a deep discount, enabling PPG to avoid buying back what would otherwise be excess unsold product. Lawson did not agree with this mistinting scheme and filed two anonymous complaints with PPG's central ethics hotline. He also told Moore directly that he refused to participate. The complaints led to an investigation. PPG eventually told Moore to discontinue the practice, but Moore remained with the company, where he

continued to directly supervise Lawson and oversee his market walk evaluations.

Some months later, after determining that Lawson had failed to meet the goals outlined in his performance improvement plan, both Moore and Moore's supervisor recommended that Lawson be fired. He was.

Lawson filed suit in the United States District Court for the Central District of California. As relevant here, Lawson claimed that PPG had fired him because he blew the whistle on Moore's fraudulent mistinting practices, in violation of the protections codified in Labor Code section 1102.5 (section 1102.5). PPG moved for summary judgment. Invoking a line of authority that traces back to *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378 (*Patten*), the district court applied the three-part burden-shifting framework laid out in *McDonnell Douglas*, *supra*, 411 U.S. 792 to evaluate Lawson's section 1102.5 claim. Under that approach, the employee must establish a prima facie case of unlawful discrimination or retaliation. (*McDonnell Douglas*, at p. 802.) Next, the employer bears the burden of articulating a legitimate reason for taking the challenged adverse employment action. (*Ibid.*) Finally, the burden shifts back to the employee to demonstrate that the employer's proffered legitimate reason is a pretext for discrimination or retaliation. (*Id.* at p. 804.)

As to the first step of *McDonnell Douglas*, the district court concluded that Lawson had established a prima facie case of unlawful retaliation based on his efforts to stop the paint mistinting scheme. Moving to the second step of the framework, the court determined that PPG had sustained its burden of articulating a legitimate, nonretaliatory reason for firing him —

namely, Lawson's poor performance on market walks and failure to demonstrate progress under the performance improvement plan. Finally, the district court concluded Lawson had failed to produce sufficient evidence that PPG's stated reason for firing Lawson was pretextual. Because Lawson could not satisfy this third step of the *McDonnell Douglas* test, the court granted summary judgment in favor of PPG on the whistleblower retaliation claim.

On appeal to the Ninth Circuit, Lawson argued that the district court erred in applying *McDonnell Douglas*. He contended the court should instead have applied the framework set out in Labor Code section 1102.6 (section 1102.6). Under the statutory framework, Lawson contended, his burden was merely to show that his whistleblowing activity was "a contributing factor" in his dismissal, not to show that PPG's stated reason was pretextual. The Ninth Circuit determined that the outcome of Lawson's appeal hinged on which of those two tests applied but signaled uncertainty on this point. (*Lawson v. PPG Architectural Finishes, Inc.* (9th Cir. 2020) 982 F.3d 752, 755.) It observed that our state's appellate courts do not follow a consistent practice and that this court has never ruled on the issue. (*Id.* at pp. 755–759.) It asked us to consider the question and we granted the request.

## II.

Section 1102.5 provides whistleblower protections to employees who disclose wrongdoing to authorities. As relevant here, section 1102.5 prohibits an employer from retaliating against an employee for sharing information the employee "has reasonable cause to believe . . . discloses a violation of state or federal statute" or of "a local, state, or federal rule or regulation"

with a government agency, with a person with authority over the employee, or with another employee who has authority to investigate or correct the violation. (§ 1102.5, subd. (b).) "This provision," we have explained, "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 77.) An employee injured by prohibited retaliation may file a private suit for damages. (Lab. Code, § 1105; see *Gardenhire v. Housing Authority* (2000) 85 Cal.App.4th 236, 241.)

When section 1102.5 was first enacted in 1984, the statute supplied only a set of substantive protections against whistleblower retaliation, unaccompanied by any provision setting forth procedures for proving retaliation. (Stats. 1984, ch. 1083, § 1, p. 3698.) So to give life to those substantive protections, courts looked to analogous statutory schemes for procedural guidance. Much as courts had done in employment discrimination and retaliation cases brought under the Fair Housing and Employment Act (FEHA), courts in section 1102.5 cases generally adopted the three-part *McDonnell Douglas* burden-shifting framework. (See *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67–69 (*Morgan*); *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453; see also *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*) [applying *McDonnell Douglas* to a discrimination claim under FEHA; citing cases]; *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 [applying *McDonnell Douglas* to a FEHA retaliation claim; citing cases].)

As we explained in *Guz*, the high court established the *McDonnell Douglas* framework for trying claims of intentional discrimination — there, intentional employment discrimination

in violation of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) — based on circumstantial rather than direct evidence. (*Guz, supra*, 24 Cal.4th at p. 354.) Courts applying it to section 1102.5 retaliation cases adapted the test for that context, describing it as follows: First, a plaintiff who seeks to rely on circumstantial evidence must establish a prima facie case of retaliation, meaning " ' "a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two." ' " (*Morgan, supra*, 88 Cal.App.4th at p. 69.) Second, if the plaintiff has established a prima facie case, the burden of production shifts to the employer to come forward with evidence of "a legitimate, nondiscriminatory reason for the adverse employment action." (*Id.* at p. 68.) Third, if the employer produces substantial evidence of a legitimate, nondiscriminatory reason, then the plaintiff bears the burden of proving the reason was a pretext for impermissible retaliation. (*Id.* at pp. 68–69.)

Courts imposed no similar burden-shifting requirements in cases built on direct evidence of retaliation. *Morgan*, however, cited out-of-state authority for the proposition that "[w]here a plaintiff offers direct evidence of discrimination that is believed by the trier of fact, the defendant can avoid liability only by proving the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor." (*Morgan, supra*, 88 Cal.App.4th at pp. 67–68, citing, inter alia, *Price Waterhouse v. Hopkins* (1989) 490 U.S. 228, 244–245.) In other words, the test, as *Morgan* described it, allowed the employer to avoid liability upon a showing the employer would have made the same decision even absent any retaliatory motive.

In 2003, the Legislature amended the Labor Code's whistleblower protections in response to a series of high-profile corporate scandals and reports of illicit coverups. (Stats. 2003, ch. 484, § 3, pp. 3518–3519.) Specifically citing "the recent spate of false business reports and other illegal activity by Enron, WorldCom and others" (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as amended May 29, 2003, p. 1), legislators expressed concern that new laws were "needed in order to prevent the kind of damage to shareholders, investors, employees and the market that Enron and WorldCom, and now HealthSouth continue to cause." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as introduced Feb. 21, 2003, p. 6.) The amendments, the Assembly Committee on the Judiciary explained, were designed to "encourage earlier and more frequent reporting of wrongdoing by employees and corporate managers when they have knowledge of specified illegal acts" by "expanding employee protection against retaliation." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777, *supra*, as amended May 29, 2003, p. 1.)

As pertinent here, the 2003 amendments added a procedural provision, section 1102.6, which states in full: "In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5."

After section 1102.6 took effect, some California courts identified that provision as supplying the applicable standards for claims of whistleblower retaliation under section 1102.5, without relying on *McDonnell Douglas*'s burden-shifting framework. But other courts have continued to rely on the *McDonnell Douglas* framework without mentioning section 1102.6. (See *Patten, supra,* 134 Cal.App.4th at p. 1384 ["The elements of a section 1102.5(b) retaliation cause of action require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show this explanation is merely a pretext for the retaliation"]; *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121 [same]; *Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538, 1540 [same].)

As the Ninth Circuit explained in its certification order, "Although neither *Hager*, *Patten*, nor *Mokler* even cites, much less meaningfully deals with, section 1102.6, these cases have sown widespread confusion as to which evidentiary standard actually applies to section 1102.5 retaliation claims." (*Lawson v. PPG Architectural Finishes, Inc.*, *supra*, 982 F.3d at p. 757.) This confusion is reflected in the decisions of the federal courts, which have taken a variety of approaches to the issue. (Compare *Monaghan v. Telecom Italia Sparkle of North America, Inc.* (C.D.Cal., July 22, 2013, No. CV 13-00646 ABC (PLAx)) 2013 WL 12171957, p. *10 [describing § 1102.6 as setting forth the burden of proof for a § 1102.5 claim], *Greer v. Lockheed Martin Corp.* (N.D.Cal. 2012) 855 F.Supp.2d 979, 989 [same], and *Kumar v. Alameda County Medical Center* (N.D.Cal., Mar. 25, 2011, No. 09-4312 EDL) 2011 WL 13244636, pp. *13, *16 [same] with *Nikmanesh v. Walmart Inc.* (9th Cir. 2019) 789 Fed.Appx.

30, \*31–\*32 [applying *McDonnell Douglas* to the plaintiff's § 1102.5 claim], *Sorensen v. National Railroad Passenger Corp.* (9th Cir. 2019) 786 Fed.Appx. 652, \*653, \*655 [same], and *Canupp v. Children's Receiving Home of Sacramento* (E.D.Cal. 2016) 181 F.Supp.3d 767, 789, 795 [describing both *McDonnell Douglas* and § 1102.6 as the governing evidentiary tests].)

### III.

To resolve the confusion, we now clarify that section 1102.6, and not *McDonnell Douglas*, supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower claims.

By its terms, section 1102.6 describes the applicable substantive standards and burdens of proof for both parties in a section 1102.5 retaliation case: First, it must be "demonstrated by a preponderance of the evidence" that the employee's protected whistleblowing was a "contributing factor" to an adverse employment action. (§ 1102.6.) Then, once the employee has made that necessary threshold showing, the employer bears "the burden of proof to demonstrate by clear and convincing evidence" that the alleged adverse employment action would have occurred "for legitimate, independent reasons" even if the employee had not engaged in protected whistleblowing activities. (*Ibid.*)

PPG suggests that the sole pertinent effect of section 1102.6 was to codify a kind of defense available to employers, colloquially known as the "same-decision defense," and to impose a heightened burden to prove the defense by "clear and convincing evidence." (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 239 (*Harris*).) Section 1102.6 indeed does those things, but that is not all it does. The first prong of the statute

also tells us what plaintiffs must prove to establish liability, and by what evidentiary standard. Specifically, plaintiffs must show, by a preponderance of the evidence, that whistleblowing was a contributing factor in the employer's decision. This is a complete set of instructions for the presentation and evaluation of evidence in section 1102.5 cases; it is not merely the codification of an affirmative defense.

It is true, as PPG points out, that much of the legislative history of section 1102.6 focuses on the employer's same-decision defense — particularly the Legislature's interest in prescribing a more demanding standard for establishing the defense. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777, *supra*, as amended May 29, 2003, p. 2 [bill provides employer "an affirmative defense against retaliation claims" by "clear and convincing evidence" standard]; Enrolled Bill Mem. to Governor on Sen. Bill No. 777 (2003–2004 Reg. Sess.) Oct. 6, 2003, p. 1 ["This bill extends the current protection of the state whistleblower law by . . . increasing the burden of proof on the employer to a clear and convincing evidence standard"].) But even though the codification of the plaintiff's burden received less attention in the legislative history, the Legislature undoubtedly understood what is clear from the face of the statute it enacted: that section 1102.6 established "the evidentiary burdens *of the parties* participating in a civil action or administrative hearing involving an alleged violation of the bill's provisions." (Legis. Counsel's Dig., Sen. Bill No. 777 (2003–2004 Reg. Sess.) 5 Stats. 2003, Summary Dig., p. 222, italics added; see *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1169 [the Legislative Counsel's Digest is " 'printed as a preface to every bill considered by the Legislature' " to " 'assist the Legislature in its consideration of

pending legislation' "].) That is, section 1102.6 sets forth the evidentiary burdens of both sides in a whistleblower retaliation suit, not just one.

Even accepting that section 1102.6 establishes a complete set of instructions for both sides, PPG argues that courts need not choose between employing the section 1102.6 and *McDonnell Douglas* frameworks because one does not replace the other. On the contrary, PPG contends, *McDonnell Douglas* continues to govern at the first step of the section 1102.6 analysis. After all, PPG reasons, that first step of the section 1102.6 framework still requires plaintiffs to prove the employer's retaliatory intent, and determining an employer's intent is the purpose of the *McDonnell Douglas* test. (See *Guz, supra*, 24 Cal.4th at p. 354.)

PPG's premises are correct, but its conclusion does not follow. Liability under section 1102.6 does require proof of retaliatory intent, and *McDonnell Douglas* does offer a method for proving such intent. (*Guz, supra*, 24 Cal.4th at p. 355.) But *McDonnell Douglas* is not the only possible method of proving discriminatory or retaliatory intent. (See, e.g., *Trans World Airlines, Inc. v. Thurston* (1985) 469 U.S. 111, 121 [*McDonnell Douglas* does not apply when the plaintiff presents direct evidence of discrimination].) Nor is it a method of proof well suited to litigation under the section 1102.6 framework.

Section 1102.6 requires whistleblower plaintiffs to show that retaliation was a "contributing factor" in their termination, demotion, or other adverse action. This means plaintiffs may satisfy their burden of proving unlawful retaliation even when other, legitimate factors also contributed to the adverse action. (See, e.g., *State Comp. Ins. Fund v. Ind. Acc. Com.* (1959) 176 Cal.App.2d 10, 17 (*State Comp. Ins. Fund*) [describing a

contributing factor standard as one in which the conduct at issue need not be the "exclusive cause" of the plaintiff's injuries]; *Rookaird v. BNSF Ry. Co.* (9th Cir. 2018) 908 F.3d 451, 461 (*Rookaird*) [" 'A "contributing factor" includes "any factor, which alone or in connection with other factors, tends to affect in any way the outcome of the decision" ' "].) But as we explained in *Harris*, the three-part *McDonnell Douglas* test was not written for the evaluation of claims involving multiple reasons for the challenged adverse action. *McDonnell Douglas* was decided at a time when the law generally presumed "that the employer has a single reason for taking an adverse action against the employee and that the reason is either discriminatory or legitimate." (*Harris, supra,* 56 Cal.4th at p. 215.) The *McDonnell Douglas* framework reflects that presumption: "By hinging liability on whether the employer's proffered reason for taking the action is genuine or pretextual, the *McDonnell Douglas* inquiry aims to ferret out the 'true' reason for the employer's action." (*Ibid.*) This focus on identifying the single, true reason for the adverse action creates complications in a so-called mixed-motives case, in which the employer is alleged to have acted for multiple reasons, some legitimate and others not: "What is the trier of fact to do when it finds that a mix of discriminatory and legitimate reasons motivated the employer's decision?" (*Ibid.*)

Although we acknowledged in *Harris* that courts have adopted the *McDonnell Douglas* test for FEHA employment discrimination cases that do not involve mixed motives, we declined to adopt the same test to govern mixed-motives cases. We instead explained that the plaintiff in a mixed-motives case bears an initial burden of showing that discrimination "was a substantial factor motivating his or her termination," without

ever suggesting that the plaintiff must satisfy the *McDonnell Douglas* test to carry this burden. (*Harris*, *supra*, 56 Cal.4th at p. 241; cf. *id.* at p. 239 [contrasting the causal standard in FEHA with the "contributing factor" standard in § 1102.6].)

Other courts addressing burden-shifting frameworks similar to section 1102.6 have similarly found *McDonnell Douglas* inapplicable. For instance, nearly all courts to address the issue have concluded that *McDonnell Douglas* has no role to play in the adjudication of First Amendment retaliation claims under the burden-shifting framework of *Mt. Healthy City Board of Ed. v. Doyle* (1977) 429 U.S. 274, which closely resembles the section 1102.6 framework. *Mt. Healthy* assigns to plaintiffs the initial burden of showing that conduct protected by the First Amendment was a " 'substantial' " or " 'motivating' " factor in an employer's adverse employment decision, then assigns to the defendant the burden of showing it would have made the same decision in the absence of the protected conduct. (*Mt. Healthy*, at p. 287.) In such cases, "almost every circuit to have considered whether *McDonnell Douglas* should apply . . . has thought the idea a poor one." (*Walton v. Powell* (10th Cir. 2016) 821 F.3d 1204, 1210; see *id.* at pp. 1210–1212 [cataloging cases].)[1]

Much the same is true of courts interpreting federal statutes similar to section 1102.6. For instance, the federal Sarbanes-Oxley Act of 2002 (Sarbanes-Oxley) (18 U.S.C.

---

[1] The "almost" is a nod to the Eighth Circuit, whose precedent has been somewhat inconsistent on the issue, though more recent precedent suggests *McDonnell Douglas* does not apply to First Amendment retaliation claims. (See *Wagner v. Jones* (8th Cir. 2011) 664 F.3d 259, 270 [distinguishing the *Mt. Healthy* framework from *McDonnell Douglas*].)

§ 1514A(b)(2)(A)) — which was enacted shortly before the Legislature enacted section 1102.6 — contains a nearly identical burden-shifting framework for the adjudication of whistleblower cases. The courts to address the issue have generally concluded that framework displaces *McDonnell Douglas* rather than supplementing it. (See, e.g., *Day v. Staples, Inc.* (1st Cir. 2009) 555 F.3d 42, 53 & fn. 6; *Allen v. Administrative Review Bd.* (5th Cir. 2008) 514 F.3d 468, 475–476; *Barrick v. PNGI Charles Town Gaming, LLC* (4th Cir. 2020) 799 Fed.Appx. 188, 189; *Johnson v. Stein Mart, Inc.* (11th Cir. 2011) 440 Fed.Appx. 795, 801; see also *Araujo v. New Jersey Transit Rail Operations, Inc.* (3d Cir. 2013) 708 F.3d 152, 157–158 ["when a burden-shifting framework other than *McDonnell Douglas* is present in a statute, Congress specifically intended to alter any presumption that *McDonnell Douglas* is applicable"]; *Fraser v. Fiduciary Trust Co. Intern.* (2d Cir. 2010) 396 Fed.Appx. 734, 735 [declining to decide the question but noting that "Sarbanes-Oxley provides its own burden-shifting framework"]; *Beacom v. Oracle America, Inc.* (8th Cir. 2016) 825 F.3d 376, 379 [setting out separate Sarbanes-Oxley framework without any mention of *McDonnell Douglas*]; *Bechtel v. Administrative Review Bd., U.S.* (2d Cir. 2013) 710 F.3d 443, 447 [same].) Courts have generally reached similar conclusions with respect to other statutes containing similar burden-shifting schemes. (*Trimmer v. U.S. Dept. of Labor* (10th Cir. 1999) 174 F.3d 1098, 1101–1102 [*McDonnell Douglas* displaced by similar statutory framework in whistleblower provisions of Energy Reorganization Act of 1974]; *Araujo, supra,* 708 F.3d at pp. 158–159 [same conclusion under whistleblower provisions of Federal Railroad Safety Act].)

We reach a similar conclusion here. It would make little sense to require section 1102.5 retaliation plaintiffs to satisfy

*McDonnell Douglas* for the sake of proving that retaliation was a contributing factor in an adverse action. The central problem lies at the third step of *McDonnell Douglas*, which requires the plaintiff to prove that an employer's proffered legitimate reason for taking an adverse action was a pretext for impermissible retaliation. (*Morgan, supra*, 88 Cal.App.4th at pp. 68–69.) Under section 1102.6, a plaintiff does not need to show that the employer's nonretaliatory reason was pretextual. Even if the employer had a genuine, nonretaliatory reason for its adverse action, the plaintiff still carries the burden assigned by statute if it is shown that the employer also had at least one retaliatory reason that was a contributing factor in the action. There is, then, no reason why whistleblower plaintiffs should be required to satisfy the three-part *McDonnell Douglas* inquiry — and prove that the employer's proffered legitimate reasons were pretextual — in order to prove that retaliation was a contributing factor under section 1102.6. To the contrary, placing this unnecessary burden on plaintiffs would be inconsistent with the Legislature's evident purpose in enacting section 1102.6: namely, "encourag[ing] earlier and more frequent reporting of wrongdoing by employees and corporate managers when they have knowledge of specified illegal acts" by "expanding employee protection against retaliation." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777, *supra*, as amended May 29, 2003, p. 1, italics omitted.)

At oral argument, counsel for PPG acknowledged the apparent mismatch between *McDonnell Douglas* and section 1102.6's contributing factor standard, but suggested that we should adapt *McDonnell Douglas* for purposes of guiding courts in the proper application of that standard. We see no indication that the courts are in need of this sort of guidance. The

contributing factor standard is not an unfamiliar one. (See, e.g., *State Comp. Ins. Fund*, *supra*, 176 Cal.App.2d at p. 17; *Rookaird*, *supra*, 908 F.3d at p. 461.) And we are not persuaded that introducing to the law yet another burden-shifting framework — a framework inspired by *McDonnell Douglas*, yet not *McDonnell Douglas* itself — would clarify matters more than it would confuse them.

PPG argues the legislative history reflects an intent to preserve a role for *McDonnell Douglas* in the adjudication of section 1102.5 retaliation cases. PPG's argument centers on a bill analysis prepared by the Senate Rules Committee. Citing both *Morgan* and *McDonnell Douglas*, the bill analysis characterized existing law as follows: "[A]fter a plaintiff shows by a preponderance of evidence that the action taken by the employer is proscribed by the whistleblower statute, the burden shifts to the employer to show by a preponderance of the evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by the whistleblower statute." (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as introduced Feb. 21, 2003, p. 3.) The analysis went on to say: "This bill instead requires the employer to make that showing by clear and convincing evidence." (*Ibid.*) PPG sees this as evidence that the Legislature intended to preserve *McDonnell Douglas*, emphasizing that the bill analysis concerns only the codification of the burden on the employer to make out its same-decision defense and evinces no intent to displace "existing case law" (*ibid.*) insofar as existing law placed the burden on plaintiffs to establish retaliation under the *McDonnell Douglas* test. Lawson, by contrast, understands the bill analysis to mean that

the Legislature recognized that *McDonnell Douglas* was part of then-existing law and meant to change it.

In truth, the bill analysis yields no clear answers on the *McDonnell Douglas* question. That is because the existing law the bill analysis attributes to *McDonnell Douglas* bears little resemblance to the test actually set out in *McDonnell Douglas* — as opposed to, for example, the meaningfully different *Mt. Healthy* burden-shifting framework. (See p. 13, *ante.*) Since the bill analysis does not acknowledge any understanding of the three-part *McDonnell Douglas* test as it had been applied in section 1102.5 retaliation cases, it is difficult to discern any legislative intent to either displace or preserve it. Fortunately, however, better evidence of the Legislature's intent on that point exists in the form of the text of the statute it ultimately enacted — which, as we have already explained, is best read as allowing plaintiffs to establish liability under section 1102.5 without requiring reliance on *McDonnell Douglas*.

PPG also contends that even if section 1102.6 rather than *McDonnell Douglas* supplies the governing framework for the presentation of evidence at trial, *McDonnell Douglas* should govern at summary judgment for purposes of determining whether the plaintiff can meet the statutorily assigned burden of demonstrating that retaliation was a contributing factor in an adverse employment decision.

We reject the contention. Nothing in the text of section 1102.6 supports this bifurcated approach, where one standard would govern section 1102.5 cases on summary judgment and a different standard would govern cases at trial. As we have already explained, PPG's argument is simply incompatible with

the contributing factor standard set out in section 1102.6. That is no less true at summary judgment than at trial. Were we to adopt PPG's bifurcated approach, employee plaintiffs might never have the opportunity to show at trial that retaliation was a contributing factor in an adverse action, because they would have first been required to show at summary judgment that retaliation was, in effect, the *only* factor. The purpose of summary judgment is not to weed out cases that might prove meritorious at trial. For that reason, the parties' burdens of proof at summary judgment generally depend on their burdens of proof at trial. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 & fn. 15.) This case presents no reason to depart from that rule.

PPG expresses concern that applying section 1102.6's contributing factor standard at summary judgment instead of *McDonnell Douglas* will allow too many "meritless claims" to go to trial. To the extent PPG assumes that employers will not be able to raise a same-decision defense on summary judgment, that assumption is incorrect. (See, e.g., *Texas v. Lesage* (1999) 528 U.S. 18, 20–21 [upholding a grant of summary judgment based on the same-decision defense].) In any event, PPG's concern about more cases going to trial is not a sufficient reason to march every case through the *McDonnell Douglas* three-step solely for purposes of summary judgment. To the extent PPG is concerned that the existing framework sets the plaintiff's bar too low by requiring only a showing that retaliation was a contributing factor in an adverse decision, PPG's remedy lies

with the Legislature that selected this standard, not with this court.[2]

## IV.

We answer the Ninth Circuit's question as follows: Section 1102.6 provides the governing framework for the presentation and evaluation of whistleblower retaliation claims brought under section 1102.5. First, it places the burden on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action. The plaintiff need not satisfy *McDonnell Douglas* in order to discharge this burden. Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity.

---

[2] We disapprove *Hager v. County of Los Angeles*, *supra*, 228 Cal.App.4th 1538, 1540, *Mokler v. County of Orange*, *supra*, 157 Cal.App.4th 121, 138, and *Patten v. Grant Joint Union High School Dist.*, *supra*, 134 Cal.App.4th 1378, 1384 to the extent they are inconsistent with this opinion.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**MILLER, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, Fourth Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Lawson v. PPG Architectural Finishes, Inc.

---

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**  XX on request by 9th Circuit (Cal. Rules of Court, rule 8.548)
**Review Granted (published)**
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S266001
**Date Filed:**  January 27, 2022

---

**Court:**
**County:**
**Judge:**

---

**Counsel:**

HKM Employment Attorneys, Patrick Leo McGuigan, Chaka Okadigbo; Obermayer Rebmann Maxwell & Hippel, Bruce C. Fox and Andrew J. Horowitz for Plaintiff and Appellant.

Littler Mendelson, Michael W. M. Manoukian, Theodore A. Schroeder, Robert W. Pritchard, Everett Clifton Martin; Hopkins & Carley and Karin M. Cogbill for Defendant and Respondent.

Nicholas Patrick Seitz, Cristina Schrum-Herrera, David L. Bell, Dorothy A. Chang and Phoebe Liu for Department of Industrial Relations, Division of Labor Standards Enforcement as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Chaka Okadigbo
HKM Employment Attorneys LLP
700 South Flower Street, 10th Floor, #1067
Los Angeles, CA 90017
(213) 431-6209

Robert W. Pritchard
Littler Mendelson, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
(412) 201-7628