NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 2 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WALLEN LAWSON, | No. 22-56114 |
| Plaintiff-Appellant, | D.C. No. |
| v. | 8:18-cv-00705-JVS-JPR |
| PPG ARCHITECTURAL FINISHES, INC., | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted December 8, 2023
San Francisco, California

Before:  COLLINS, FORREST, and SUNG, Circuit Judges.
Concurrence by Judge FORREST.

Plaintiff-Appellant Wallen Lawson appeals the district court's grant of

summary judgment in favor of Defendant-Appellee PPG Architectural Finishes,

Inc. ("PPG") on his claims for whistleblower retaliation under California Labor

Code § 1102.5 and common law wrongful termination. We have jurisdiction under

28 U.S.C. § 1291, and we review the district court's decision de novo, *Ochoa v.*

---

        *        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

*City of Mesa*, 26 F.4th 1050, 1055 (9th Cir. 2022). To affirm a district court's grant of summary judgment, an appellate court must find, viewing the evidence in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the district court correctly applied the relevant standard of law. *Id*. "A factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Applying these standards, we reverse the district court's decision on the statutory claim, vacate its decision on the common law claim, and remand.

Lawson's manager at PPG, Clarence Moore, directed his subordinates to secretly tint poor-selling paint product the wrong color, which forced PPG's client, Lowe's, to sell the product at a deep discount, and allowed PPG to avoid buying back unsold inventory. This fraudulent scheme also made PPG employees' sales numbers "appear to be better than they actually [were]." Lawson anonymously reported the scheme through PPG's ethics reporting system and, a few days later, openly confronted Moore about it as well.

Moore was involved in every decision or action that led to PPG's termination of Lawson's employment: Moore (1) evaluated Lawson's performance on market walks; (2) put Lawson on a Performance Improvement Plan ("PIP"); and (3) asked PPG to terminate Lawson's employment. PPG asserts that it

terminated Lawson for two reasons: "falsified" entries in a training roster and failure to meet the goals of his PIP, including improved market walk performance scores and sales targets. Both purported bases for the termination were identified by Moore.

**Whistleblower Retaliation Claim**

Lawson claims that PPG terminated him in violation of California's whistleblower protection law, California Labor Code § 1102.5. The California Supreme Court, on certification from a prior appeal in this case, held that California Labor Code § 1102.6 provides a two-step framework for § 1102.5 whistleblower retaliation claims. *Lawson v. PPG Architectural Finishes, Inc.*, 503 P.3d 659, 667–68 (Cal. 2022). At step one, the plaintiff must "establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Id.* at 667. At step two, "the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." *Id.* at 667–68. To satisfy the "clear and convincing" burden of proof under California law, the evidence must be "so clear as to leave no substantial doubt," and "sufficiently strong to command the unhesitating assent of every reasonable mind." *In re Angelia P.*, 623 P.2d 198, 204 (Cal. 1981) (cleaned up). The § 1102.6

framework "closely resembles" the *Mt. Healthy* framework for First Amendment retaliation claims, but the employer's burden under § 1102.6 is higher (clear and convincing) than it is under *Mt. Healthy* (preponderance of the evidence). *Lawson*, 503 P.3d at 665 (citing *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

On remand, the district court concluded that a reasonable jury could find that Lawson met his burden at step one of the § 1102.6 test, i.e., that he demonstrated by a preponderance of the evidence that retaliation was a "contributing factor" in his termination. But the district court held that PPG carried its burden at step two, i.e., that it demonstrated that no reasonable jury could find that PPG had failed to show, by clear and convincing evidence, that Lawson would have been terminated for "legitimate, independent reasons" irrespective of his whistleblowing activity. On appeal, PPG asks us to affirm the grant of summary judgment either on the same ground, or on the ground that Lawson cannot meet his burden at step one.

For the reasons explained below, we agree with the district court that there is a genuine factual dispute regarding whether Lawson met his burden at step one. *Ochoa*, 26 F.4th at 1055; *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) ("[W]hen 'questions of motive predominate in the inquiry about how big a role the protected behavior played in the decision, summary judgment will usually not be appropriate.'" (quoting *Mabey v. Reagan*, 537 F.2d 1036, 1045 (9th

4

Cir. 1976))). However, unlike the district court, we conclude that there is also a genuine factual dispute regarding whether PPG met its burden at step two. Viewing the record in the light most favorable to Lawson, a reasonable jury could find by a preponderance of the evidence that Lawson's protected activity was a contributing factor in his termination. Further, a reasonable jury could find that PPG failed to prove, by clear and convincing evidence, that it would have terminated Lawson, even if Lawson had not engaged in protected activity.

1. As a threshold matter, the district court erred by relying on Moore's testimony to resolve several disputed issues of material fact, even though the record contains multiple bases for impeaching Moore's credibility.[1] *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978) ("The courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue."); *see also Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 511 (9th Cir. 2004) (employer not entitled to judgment as a matter of law where evidence of employee's poor work performance "hinged entirely" on word of supervisor with retaliatory motive, "which the jury was certainly entitled to disregard").

---

[1] For example, even though PPG's internal investigation found that Moore directed the fraudulent mis-tinting scheme, Moore denied knowing about the practice of mis-tinting at his deposition. For another example, Moore testified in his deposition that he did not request Lawson's termination, but the record contains an email dated August 21, 2017, in which Moore explicitly requested Lawson's termination.

2.   The district court also erred by repeatedly faulting Lawson for failing to present evidence proving that PPG's proffered legitimate reasons for terminating him were pretextual. The California Supreme Court held in *Lawson* that, "[u]nder section 1102.6, a plaintiff does not need to show that the employer's nonretaliatory reason was pretextual." 503 P.3d at 666. Instead, "plaintiffs may satisfy their burden of proving unlawful retaliation even when other, legitimate factors also contributed to the adverse action." *Id.* at 664. And, the employer does not satisfy its burden just by demonstrating that it had a legitimate reason to take the challenged employment action. *See id.* at 664–65; *see also Gillette v. Delmore*, 886 F.2d 1194, 1198 (9th Cir. 1989).[2]

Thus, in this case, even assuming PPG demonstrated that it *could* have terminated Lawson for the legitimate reasons it identified, PPG would still not be entitled to summary judgment unless it also demonstrated, "by clear and convincing evidence, that it *would* have" terminated Lawson for those reasons, even if he had "not engaged in protected activity." *Lawson*, 503 P.3d at 667–68 (emphasis added); *see also Gillette*, 886 F.2d at 1198 ("The district court found that two other charges were serious enough to warrant termination, given

---

[2] We cite First Amendment retaliation cases because the California Supreme Court explained that the *Mt. Healthy* and § 1102.6 frameworks are substantially the same. *See Lawson*, 503 P.3d at 665 ("the [*Mt. Healthy*] burden-shifting framework . . . closely resembles the section 1102.6 framework" (citing *Mt. Healthy*, 429 U.S. at 287)).

[plaintiff's] prior disciplinary history. This, however, is not enough. [Defendant] must show that it *would* have terminated him, not that it *could* have." (emphasis in original)).

3. There are genuine disputes of material fact regarding Moore's decision to place Lawson on a PIP and his management of that PIP. Viewing the record in the light most favorable to Lawson, a reasonable jury could find that Moore placed Lawson on a 60-day PIP just a few days after Lawson openly refused to participate in the mis-tinting scheme and that Moore's retaliatory motive contributed to that decision. *See, e.g.*, *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) (holding timing can properly be considered as circumstantial evidence of retaliatory intent).

Contrary to what PPG claimed at oral argument, the record shows a material factual dispute as to when Lawson was informed of the PIP. Although Lawson initially answered "[y]es" when asked during his deposition whether Moore had informed him of the PIP on April 21, the transcript also shows that Lawson immediately corrected himself and stated that Moore only discussed "issues" regarding Lawson's performance at that time. Nothing in the record clearly demonstrates that Moore had decided to place Lawson on a PIP prior to Moore's April 26 email to Andrew Mayhew, a member of PPG's HR department. Although PPG claims that Mayhew's responsive email shows that the two of them had

discussed placing Lawson on a PIP weeks earlier, that response can reasonably be read as stating only that Moore and Mayhew had previously discussed Lawson's performance issues. The point is significant, because a reasonable jury could find that Lawson confronted Moore about the mis-tinting scheme as late as April 25 and that Moore *then* requested the PIP—which he had not previously raised with Lawson—a day later. That finding would permit a reasonable inference that the PIP, which set Lawson on the path to termination, was a retaliatory response to the protected activity of refusing to engage in illegal conduct, *see* Cal. Lab. Code § 1102.5(c). Lawson therefore carried his burden to create a triable issue under the first prong of § 1102.6.

Additionally, it is undisputed that PPG policy required Moore to provide support to Lawson during the PIP, such as weekly coaching meetings, and that Moore failed to do so. Lawson complained to Human Resources about the lack of support, and as a "corrective action," HR extended Lawson's PIP by 30 days. But Moore still failed to attend the required coaching meetings during this extension. A reasonable jury could find that Moore's retaliatory motive contributed to his deficient management of Lawson's PIP, and that the deficient management contributed to Lawson's failure to successfully complete it. Although Moore testified that he had placed three other employees on PIPs, PPG provided no evidence that Lawson's performance issues were comparable to (or worse than)

8

those of the other employees, or that Moore managed the other employees' PIPs in a similarly deficient manner.[3] In the absence of such evidence, a reasonable jury also could find that PPG failed to meet its burden to show that Moore would have treated Lawson the same, even in the absence of his protected activity.

4. There is a genuine dispute of material fact regarding whether Moore's retaliatory motive tainted his scoring of Lawson's market walks after Lawson objected to Moore's fraudulent scheme. PPG asserts that Lawson does not dispute the accuracy of the market walk scores that Moore gave him, but that is not correct. For example, Lawson testified at his deposition that Moore gave him no credit for certain displays, even though Lawson completed more of the displays than required. For another example, the market walk evaluation records show that Moore generally refused to give partial credit for various tasks that Lawson partially completed.[4] These factual disputes are material because it is undisputed that Lawson missed the score he needed to pass the PIP by only four points. A reasonable jury could find that Moore scored Lawson harshly at least in part

_____

[3] Likewise, PPG provided no evidence that the requirements for successfully completing the PIP that Moore set for Lawson were comparable to those Moore set for other employees.

[4] Although PPG claimed at oral argument that Moore consistently gave either full or no credit across his market walk scoring of Lawson, this assertion is contradicted by the record, which shows Moore sometimes gave partial credit. Further, PPG provided no comparators showing that Moore *consistently* refused to give other employees partial credit.

9

because of his retaliatory motive. PPG failed to provide sufficient comparator evidence to require a reasonable jury to find that PPG proved by clear and convincing evidence that Moore treated Lawson like other employees.

PPG argues that Lawson's unsuccessful performance on market walks both before *and* after the protected activity is sufficient to demonstrate an independent basis for terminating him. But the scores for Lawson before and after his protected activity alone do not prove that the post-protected activity scores are accurate. Indeed, Lawson argues that but for Moore's allegedly arbitrary decision to score Lawson's performance at zero in places where he should have received partial credit, Lawson would have successfully completed his PIP. PPG also disregards the possibility that Lawson improved and Moore refused to acknowledge that improvement because of his retaliatory motive.

PPG points to one instance—Lawson's final market walk in August 2017 before his termination—in which Moore's supervisor, Sean Kacsir, approved of Moore's scoring. But that does not resolve the factual dispute because Kacsir's credibility is also genuinely disputed. There is record evidence that Kacsir was close to Moore; Kacsir insisted that Moore did nothing wrong, even after PPG's internal investigation concluded that Moore directed a fraudulent scheme; and Kacsir managed at least two other supervisors who, like Moore, directed their team members to engage in the same fraudulent scheme. Accordingly, a reasonable jury

10

could discount Kacsir's credibility.

Further, PPG provided no evidence that it normally terminates an employee for low market walk scores. Notably, the record shows that a different manager gave Lawson the highest year-to-date score in the nation less than a year before his termination. Even though the market walk scoring grids give managers wide discretion on how many points to award and whether to award partial credit, PPG concedes that it gives managers "no guidance" about how to score market walks other than the scoring grid itself. This lack of guidance and the wide variability of market walk scoring between different managers supports a reasonable inference that PPG does *not* consider one manager's market walk scores to be a dispositive measure of an employee's performance.

Although Lawson's failure to meet sales targets reflects a more objective metric, there are factual disputes concerning this issue that would permit a reasonable jury to find that PPG's proof was not clear and convincing. In particular, as the district court noted, Moore had realigned Lawson's store assignments to include "three underperforming stores, one of which later shut down completely." Although that realignment occurred before Lawson's protected activity, as did some of Lawson's earlier failures to meet sales targets, a reasonable jury could find that PPG's claimed reliance on these missed sales targets was not clear and convincing. As the district court acknowledged, Lawson "only missed his

11

sales goals by a small margin," suggesting that the weakness of the stores may have made a difference. Moreover, the district court improperly faulted Lawson for the lack of record evidence as to other Territory Managers' "sales metrics" and potential store realignments. Given the lack of such evidence, a reasonable jury could find that PPG did not clearly and convincingly show that Lawson's sales metrics reflected an objective level of inferior performance that would have led to termination without regard to his protected activity.

Because PPG failed to provide sufficient evidence to require any reasonable jury to find by clear and convincing evidence that Lawson would have been terminated absent Moore's retaliatory motive, PPG is not entitled to summary judgment. *Lawson*, 503 P.3d at 667–68; *see also Settlegoode*, 371 F.3d at 510–11 (concluding employer not entitled to judgment as a matter of law on retaliation claim where it terminated employee based on evaluations completed by supervisor with retaliatory motive).

5. There is a genuine dispute of material fact regarding whether retaliatory motive contributed to Moore's decision to characterize Lawson's training roster as "falsified." Lawson testified that the training roster issue was caused by technical problems with his company-issued equipment, and that Moore was aware of those problems and had previously emailed IT about them on Lawson's behalf. The record also includes emails in which Moore described the training roster errors as

12

"inaccuracies," without ascribing intent to falsify. Moore and Mayhew first accused Lawson of "falsifying" his training roster during Lawson's termination meeting. Mayhew testified at his deposition that there was no actual evidence that Lawson intentionally falsified the entries on his training roster. On this record, a reasonable jury could find that Moore's retaliatory motive led him to wrongly accuse Lawson of more egregious misconduct, and that PPG failed to show that it would have characterized Lawson's conduct in the same way, even if he had not engaged in protected activity.

6. Even assuming that Lawson's performance was deficient in the ways Moore identified, viewing the record in the light most favorable to Lawson, a reasonable jury could infer from the circumstances that retaliatory motive contributed to Moore's decision to ask PPG to terminate Lawson and to PPG's decision to grant that request. And we cannot conclude based solely on the undisputed facts in this record that every reasonable jury would find by clear and convincing evidence that PPG met its step two burden to show that it would have terminated Lawson, even in the absence of retaliatory motive. *See, e.g.,* *Settlegoode*, 371 F.3d at 510–12 (employer did not carry its step two burden where, although the employer said it terminated the plaintiff for inadequate individualized education programs (IEPs), it "offered no evidence that other teachers had been fired for drafting inadequate IEPs in the past or that it was

13

unusual for new teachers to struggle with IEP writing").

**Wrongful Termination Claim**

The district court also granted summary judgment in favor of PPG on Lawson's claim of wrongful termination in violation of public policy. The district court granted summary judgment on this claim solely because it is "predicated on the same alleged retaliation that was the basis of [Lawson's] first claim." Because we conclude that genuine disputes of material fact preclude summary judgment on Lawson's retaliation claim, we vacate the district court's decision as to the wrongful termination claim and remand for further consideration consistent with this decision.

**REVERSED AND REMANDED.**

*Wallen Lawson v. PPG Architectural Finishes, Inc.,* No. 22-56114
Forrest, J., concurring.

Because I agree that there are genuine issues of disputed material fact regarding whether Defendant-Appellee PPG Architectural Finishes, Inc. can prove by clear and convincing evidence that it would have terminated Plaintiff-Appellant Wallen Lawson "for legitimate, independent reasons even if [Lawson] had not engaged in activities protected by [California Labor Code] Section 1102.5," Cal. Lab. Code § 1102.6, particularly where the record does not definitively establish that Lawson was informed that he would be placed on a performance improvement plan to correct his work deficiencies before he engaged in protected activity, I concur in the court's judgment.