Filed 7/3/24  Conda v. Xsolla CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| RHOTUNDA CONDA, | B316369 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV41974) |
| v. | |
| XSOLLA (USA), INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed in part, reversed in part, and remanded.

Tron & Tron, Lanny M. Tron and Terry L. Tron for Plaintiff and Appellant.

Blank Rome, Dennis Ehling, and Caitlin Sanders for Defendant and Respondent.

_____

Plaintiff sued her former employer for retaliation in violation of the Federal Employment and Housing Act (FEHA), Labor Code sections 98.6 and 1102.5, and related claims. Defendant moved for summary judgment, and the trial court granted the motion. Plaintiff appeals and argues this was error because there are disputed issues of material fact precluding summary judgment.

The parties are familiar with the facts, and our opinion does not meet the criteria for publication. (Cal. Rules of Court, rule 8.1105(c).) We accordingly resolve the cause before us, consistent with constitutional requirements, via a written opinion with reasons stated for our conclusion that there do exist triable issues of material fact solely as to plaintiff's causes of action predicated on a retaliation theory of liability. (Cal. Const., art. VI, § 14; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1261-1264 [three-paragraph discussion of issue on appeal satisfies constitutional requirement because "an opinion is not a brief in reply to counsel's arguments"; "[i]n order to state the reasons, grounds, or principles upon which a decision is based, [an appellate court] need not discuss every case or fact raised by counsel in support of the parties' positions"].)

\* \* \*

Summary judgment is appropriate when the moving party shows "[it] is entitled to a judgment as a matter of law" because, among other things, the nonmoving party cannot establish "[o]ne or more elements of the[ir] cause of action." (Code Civ. Proc., § 437c, subds. (c), (o)(1) & (p)(2); *QDOS, Inc. v. Signature Financial, LLC* (2017) 17 Cal.App.5th 990, 998.) Summary judgment should be denied only if there are "genuine" or "triable" issues of fact to be resolved at trial—that is, "if, the evidence would allow a reasonable trier of fact to find . . . in favor of the

party opposing the motion." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860 (*Serri*).) We review a trial court's summary judgment ruling de novo. (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 455.)

1. **Summary Adjudication of Conda's First Cause of Action for FEHA Retaliation Requires Reversal**

To prevail on a claim for retaliation under FEHA, Labor Code section 1102.5, or Labor Code section 98.6, a plaintiff must establish—among other things—that she engaged in an activity that is protected under one of those statutory schemes. (Gov. Code, § 12940, subd. (h); *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 709 (*Lawson*); *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 314 (*Myers*).)

FEHA prohibits an employer from discriminating against or harassing an employee "because of race, . . . medical condition, . . . sex, [or] gender," among other enumerated criteria. (Gov. Code, § 12940, subds. (a), (j).) The retaliation provision of FEHA forbids an employer from firing an employee ' "because the person has opposed any practices forbidden under' FEHA." (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1192 (*Husman*); see Gov. Code, § 12940, subd. (h).)

In evaluating claims for FEHA retaliation, California uses a burden-shifting mechanism. First, an employee must establish a prima facie case of retaliation by producing evidence to show that (1) she engaged in a "protected activity," (2) the employer subjected her to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042; *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 472; *Husman*, *supra*, 12 Cal.App.5th at pp. 1192-1193.) If the employee meets

3

this burden, it is rebuttably presumed that the employer engaged in retaliation, and the burden shifts to the employer to set forth "a legitimate, nonretaliatory reason for the adverse employment action." (*Yanowitz*, at p. 1042.) The burden then "shifts back to the employee to prove intentional retaliation." (*Ibid.*)

The parties do not dispute that Conda was subject to an adverse employment action (termination), so we focus on whether she raised triable issues of material fact as to whether she engaged in protected activity and whether there was a causal link between her protected activity and her termination.

### A. *Protected Activity*

A retaliation claim may be brought by an employee who has " 'complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA.' " (*Yanowitz, supra*, 36 Cal.4th at p. 1043.) "Opposing practices forbidden by FEHA includes . . . participating in an activity perceived by the employer as opposition to discrimination," "whether or not so intended by the individual expressing the opposition." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 380; Cal. Code Regs., tit. 2, § 11021, subd. (a)(1)(D).)

In September 2018, Conda informed Agapitov she planned to commence investigating employee allegations of a "hostile work environment," "harassment," and "retaliation" (as well as violations of the company's drug and alcohol-free workplace policy).[1] It is also undisputed that Lubensky separately advised

---

[1] Conda advised she was not disclosing the names of the complainants because "there is tremendous fear of retaliation"

4

Agapitov that Conda had received complaints of employees "making racial slurs." Conducting an investigation into either category (or both categories) of FEHA-prohibited behavior is undoubtedly protected activity; the investigations were meant to identify and redress discriminatory or unlawful behavior, i.e., actions to oppose practices forbidden by FEHA and related laws.

### B. Causal link

The trial court erred in concluding that Conda failed to raise a triable issue as to causation. Conda proffered evidence from which a factfinder could reasonably conclude that Agapitov resented her for conducting an investigation into complaints of discrimination she had received. Evidence in the summary judgment record reveals that in response to her September 2018 email informing him of the complaints and her intent to investigate, Agapitov called her and was "irate," asking her "why are you trying to do an investigation?" He demanded she stop investigating. Less than four months later, he terminated her. The timing of the relevant events is probative of a causal link. (*Hawkins v. City of Los Angeles* (2019) 40 Cal.App.5th 384, 394 ["Circumstantial evidence such as proximity in time between protected activity and alleged retaliation may establish a causal link"]; see also *Allen v. Iranon* (9th Cir. 2002) 283 F.3d 1070, 1078 [even 11 months between activity and adverse action can support an inference that an employment decision was retaliatory].)

---

and she additionally explained to Agapitov that there are "a number of people involved" and she had consulted with outside counsel. These details, combined with her decision to investigate, indicate Conda made a preliminary assessment that the complaints were credible (or at least that they could not be dismissed as not credible).

5

## C.    *Xsolla Proffered a Legitimate Reason for Firing Conda, but She Adduced Substantial Evidence of Pretext and Retaliatory Animus*

In seeking summary judgment, Xsolla claimed it fired Conda not in retaliation for her opposition to, and attempt to investigate, FEHA-prohibited behavior but because Agapitov was dissatisfied with Conda's work performance.  We will assume that there was sufficient evidence of this proffered legitimate reason to shift the burden to Conda to show " 'a triable issue by producing substantial evidence that the employer's stated reasons were . . . pretextual, or that the employer acted with a [retaliatory] *animus*.' "  (See *Serri*, *supra*, 226 Cal.App.4th at p. 861.)

Conda's summary judgment evidence carries that burden.  Agapitov admitted that his decision to fire her was "wrong" and a "mistake."[2]  Conda was also given multiple explanations about her termination, some of which were obviously contradictory.  To take one example, Lubensky explained that Conda's position was eliminated while Agapitov stated that she was fired for her deficient performance.  To take another, Agapitov's claim of deficient performance was contradicted by Conda's written performance evaluations at Xsolla, Lubensky's testimony that Conda's performance did not support her termination, Conda's receipt of a discretionary bonus in December 2018, and Agapitov's later recorded admission to Conda that firing her was "emotional and . . . the wrong decision."  These contradictions are

---

[2]    The trial court overruled Xsolla's objection to the transcript of Agapitov's apologetic phone call.  Because Xsolla did not appeal that ruling, we do not address its propriety and consider the transcript as part of the record properly before us.

6

good indicia of pretext and a factfinder could rely on this showing of pretext and all the other evidence in the summary judgment record to infer retaliation was a substantial motivating factor in Agapitov's decision to terminate Conda.

2.      **Summary Adjudication of Most of Conda's Retaliation-based Theories of Liability (the Second Cause of Action for Failure to Prevent FEHA Retaliation, the Fourth Cause of Action for Retaliation Under Labor Code Section 1102.5, and the Fifth Cause of Action for Wrongful Termination in Violation of Public Policy) Also Require Reversal**

The parties agree that this claim rises and falls with the FEHA retaliation claim, and provided no separate analysis in their briefs for this cause of action. Because this claim is derivative of Conda's FEHA retaliation claim, it also survives summary adjudication.

Labor Code section 1102.5 prohibits employers from retaliating against whistleblowing activities, such as reporting what she reasonably believes is a violation of a local, state, or federal law. (§ 1102.5, subd. (b).)

Conda's claim under Labor Code section 1102.5 is premised on her complaints of what she purports amounted to violations, or what she reasonably believed to be violations, of FEHA and Labor Code section 98.6. For the same reasons Conda's claims for retaliation under FEHA survive summary adjudication, so does her claim for retaliation under Labor Code section 1102.5.[3]

---

[3]      Indeed, in light of our Supreme Court's recent decision in *Lawson*, *supra*, 12 Cal.5th 703, summary adjudication of Conda's Labor Code section 1102.5 claim arguably presents an even stronger basis for reversal than her FEHA-based retaliation

Finally, the policy underlying a claim for wrongful termination in violation of public policy "must be supported by either constitutional or statutory provisions," and the common law claim cannot be broader than the statute on which it depends. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889-890; *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1159; *Dutra v. Mercy Medical Center Mt. Shasta* (2012) 209 Cal.App.4th 750, 756.) Because there are triable issues of fact regarding Conda's FEHA and Labor Code section 1102.5 retaliation claims, her claim for wrongful termination in violation of public policy survives summary adjudication to the extent it is based on those claims.

3. **Summary Adjudication of Conda's Labor Code Section 98.6 Claim, Her Claim for Intentional Infliction of Emotional Distress (IIED), and Her Request for Punitive Damages Was Proper**

Labor Code section 98.6 prohibits an employer from terminating an employee because she has complained that she is owed wages. (Lab. Code, § 98.6, subd. (a).) As with FEHA retaliation, a claim for retaliation under Labor Code section 98.6

_____

claim. (*Id.* at p. 712 ["By its terms, section 1102.6 describes the applicable substantive standards and burdens of proof for both parties in a section 1102.5 retaliation case: First, it must be 'demonstrated by a preponderance of the evidence' that the employee's protected whistleblowing was a 'contributing factor' to an adverse employment action. (§ 1102.6.) Then, once the employee has made that necessary threshold showing, the employer bears 'the burden of proof *to demonstrate by clear and convincing evidence*' that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities"], italics added.)

requires a good faith belief of entitlement to unpaid wages. (*St. Myers, supra,* 44 Cal.App.5th at p. 307 [Labor Code section 98.6 "prohibits discharging an employee for filing a bona fide complaint . . . relating to her rights under the jurisdiction of the Labor Commissioner"].)  Conda's claim is based on her complaint that she received a VP-level bonus instead of a c-level bonus.[4]

Conda has not raised a triable issue as to whether she had a good faith belief she was owed a c-level bonus.  Conda cites *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1331, fn. 20 for the proposition that "wages" include "bonuses." Not only is the material cited dicta, but the case the *Davis* court cited—*Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509, 522—observed that "nothing in the public policy of this state concerning wages . . . transforms [an employee's] contingent expectation of receiving bonuses into an entitlement."  *Neisendorf* stated that only "once a bonus has been promised as part of the compensation for service, and the employee fulfills all the agreed-to conditions," is a promised bonus considered wages that must be paid.  (*Ibid.*)  Here, it is undisputed that the bonus program under which Conda was given a VP-level bonus was not implemented until December 2018—long after Conda signed her employment agreement that entitled her to a base salary of $180,000 with *eligibility* to receive a 20 percent bonus.  Thus, she had no good faith belief that she was legally entitled to unpaid wages because she received a VP-level rather than a c-level bonus.

Conda asserts that the trial court erred in granting summary judgment on her claim for IIED because she raised a triable issue as to whether Xsolla's conduct was extreme and

---

[4]    Conda did not assert a separate claim for unpaid wages.

9

outrageous. IIED requires a showing of "outrageous conduct beyond the bounds of human decency." (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80 (*Janken*).)

Conda's IIED claim is premised on the same allegations underlying her claims for retaliation in addition to the ultimatum Agapitov gave her to accept a VP-level bonus and have a future at Xsolla, or to accept a c-level bonus and be fired. The conduct Conda's IIED claim is based on falls short of extreme and outrageous as a matter of law. (See *Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 780-781 [false promises of compensation that would allow employees to retire if they continued to work, although showing "a callous disregard" for the employees, was not extreme or outrageous as matter of law]; *Janken*, *supra*, 46 Cal.App.4th at p. 80 ["personnel management activity is insufficient to support a claim" of IIED, even if improperly motivated]; see *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 946 [actions that may have violated FEHA did not rise to level of extreme and outrageous].)

" '[S]ummary [adjudication] "on the issue of punitive damages is proper" only "when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression." ' " (*Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 762.) Conda's operative complaint seeks punitive damages in connection with each of its causes of action. The request for punitive damages claim as to the Labor Code section 98.6 and intentional infliction of emotional distress causes of action is obviously doomed in light of our holding that summary adjudication of those claims was proper. Summary adjudication of the punitive damages request as to the other claims was also proper, in our view, because the summary judgment record discloses no substantial evidence on which a

10

jury could rely to find the existence of oppression, fraud, or malice. (See, e.g., *Scott v. Phoenix Schools, Inc.* (2009) 175 Cal.App.4th 702, 716-717.)

## DISPOSITION

The judgment is reversed, the order granting summary judgment is vacated, and the cause is remanded for further proceedings consistent with this opinion. Specifically, the trial court is to enter a new order denying summary adjudication of Conda's claims for FEHA retaliation, failure to prevent the same, retaliation under Labor Code section 1102.5, and wrongful termination in violation of public policy; and granting summary adjudication for Xsolla as to the Labor Code section 98.6 and IIED claims as well as the request for punitive damages. Conda is awarded costs on appeal.

LEE, J.[*]

WE CONCUR:

BAKER, Acting P. J

MOOR, J.

---

[*]    Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11