Filed 1/8/26  Zappala v. Government Employees Ins. Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DEREK ZAPPALA, | D084973 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00048657-CU-WT-CTL) |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Eldessouky Law, Mohamed Eldessouky, AnaKaren Jimenez; Law Office of Maximilian Lee, and Maximilian Lee for Plaintiff and Appellant.

Womble Bond Dickinson and Jeffrey A. Topor for Defendant and Respondent.

Plaintiff Derek Zappala filed this action against Government Employees Insurance Company (GEICO) after GEICO terminated Zappala's employment with the company.  In a first amended complaint, Zappala alleged numerous causes of action, including those related to retaliation for whistleblowing, retaliation for seeking medical leave, disability

discrimination, and hostile work environment harassment. GEICO filed a motion for summary judgment, which the trial court granted.

On appeal, Zappala claims the trial court erred in granting GEICO summary judgment. We conclude Zappala has failed to demonstrate any error and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The operative first amended complaint*

Zappala filed this action in December 2022. In the operative first amended complaint, Zappala sued GEICO and two GEICO employees, Karen De Mars, Zappala's immediate supervisor, and Ladonna Bond, a Regional Human Resources Director. The first amended complaint alleged eleven causes of action against GEICO, including: retaliation for whistleblowing (Lab. Code, § 1102.5); numerous causes of action under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) including disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, hostile work environment harassment, and failure to prevent harassment and discrimination; retaliation under the California Family Rights Act (CFRA) (Gov. Code, § 12945.1 et seq.); wrongful termination; negligent infliction of emotional distress; and intentional infliction of emotional distress.[1]

According to the first amended complaint, Zappala began his employment with GEICO in 2002. Throughout his tenure with the company,

_____

[1]     The operative complaint named GEICO as a defendant to all eleven causes of action, and the individual defendants as additional defendants to the causes of action for retaliation for whistleblowing, hostile work environment harassment, and negligent and intentional infliction of emotional distress. Before GEICO's motion for summary judgment, Zappala dismissed the causes of action for negligent and intentional infliction of emotional distress. At the hearing on GEICO's motion for summary

2

he received exemplary performance reviews and several promotions.  In 2012, Zappala was promoted to Regional Underwriting Manager, a position he held until August 18, 2022, when GEICO terminated his employment.  In his managerial role, Zappala was responsible for resolving regulatory issues with the Department of Insurance.

On or about July 18, 2022, De Mars instructed Zappala to sign a memorandum requesting a staffing reduction in his department.  Zappala responded that he was unwilling to sign the memorandum for ethical, professional responsibility, and "potentially" legal reasons.  Zappala explained his reasons for refusing to sign the staffing reduction memo in e-mails to De Mars and Bond.  Zappala explained that the reduction would lead to increased customer complaints with the Department of Insurance, which would hurt GEICO and its policyholders.

Following Zappala's refusal to sign the memorandum, De Mars's demeanor toward Zappala changed and she reduced her interactions with him and excluded him from certain e-mails and meetings.  De Mars informed Zappala that he was under investigation for insubordination.

On July 28, 2022, Zappala requested leave through the Family and Medical Leave Act (FMLA) (29 U.S.C. § 2601 et seq.) due to stress and anxiety.  His leave began the next day and, on August 12, was extended for two additional weeks.  While on leave, Zappala received multiple "harassing" phone calls from Bond, which exacerbated his stress and anxiety.  Bond notified Zappala on August 18, 2022, that his employment had been terminated, effective immediately.

---

judgment, Zappala's counsel confirmed that Zappala had voluntarily dismissed all the causes of action alleged against the individual defendants with prejudice.

3

B. *GEICO's motion for summary judgment*

GEICO filed a motion for summary judgment and a supporting brief in which it argued that all Zappala's causes of action failed as a matter of law. First, GEICO argued that Zappala's causes of action for disability discrimination and retaliation under FEHA and CFRA failed for several reasons. Specifically, GEICO maintained that Zappala had not made a leave request before GEICO decided to terminate his employment, there was no causal link between the leave request and the termination of his employment, and there was a legitimate business reason for the termination. GEICO further argued that Zappala's causes of action for failure to accommodate and engage in the interactive process failed because it had provided the requested leave.

With respect to Zappala's hostile work environment harassment cause of action, GEICO argued that the evidence demonstrated that Zappala did not experience a hostile work environment as a matter of law. Similarly, with respect to his failure to prevent harassment cause of action, GEICO argued there was no actionable harassment, and it had taken all reasonable steps to prevent any harassment. GEICO further argued that Zappala's retaliation for whistleblowing cause of action failed because Zappala did not engage in whistleblowing and there was a legitimate independent reason to terminate his employment. Finally, GEICO argued that Zappala's wrongful termination cause of action failed because he could not establish his underlying FEHA causes of action and his request for punitive damages failed for lack of evidence of any act evincing sufficient malice or other improper conduct.

In his opposition, with respect to his retaliation-for-whistleblowing cause of action, Zappala noted that he had raised concerns about the

4

proposed staffing reduction with De Mars and her boss as well as with Bond, and that he had cited a provision from the California Code of Regulations when raising such concerns. Based on these complaints, Zappala argued that there was a triable issue of fact with respect to whether his employment had been terminated based on his reasonable belief that the staffing reduction had "regulatory implications." Zappala also maintained that there was a direct link between his complaints and his refusal to participate in the staffing reduction and the termination of his employment, and there was no legitimate independent reason for such termination.

With respect to his cause of action for disability discrimination, Zappala argued that he "took leave due to severe stress from being asked to engage in actions he believed were illegal," and he was terminated while on a medical leave of absence. Zappala argued that while GEICO argued De Mars had made the decision to terminate his employment before he requested leave, the evidence showed that the termination decision could have been as late as August 18. He also argued that the temporal proximity between the approval of his leave and De Mars's preparation of a memo outlining the basis for the termination of his employment as well as "text messages making light of the fact that [he] was on medical leave and call[ing] into question the legitimacy of his condition," established causality between his disability and the termination of his employment.[2] Zappala further argued that this evidence of causality demonstrated a triable issue of fact on his retaliation causes of action under FEHA and CFRA. He also maintained

---

[2]     One message from Bond stated that Zappala's illness "may or may not be" legitimate. Another message from De Mars's supervisor stated, "Is our manager in today or out sick?"

that his causes of action for failing to accommodate and engage in the interactive process were viable given his termination while on leave.

Zappala argued that his causes of action for hostile work environment could be established by evidence that he "was subjected to an ongoing feeling of being unwelcome" and by evidence that Bond repeatedly contacted him while he was on leave in connection with the investigation into his alleged insubordination. Finally, Zappala contended that his causes of action under Labor Code section 1102.5 as well as those under FEHA established a basis for his wrongful termination cause of action and that a jury could find GEICO engaged in behavior warranting punitive damages.

Both parties supported their papers with various forms of evidence, including declarations from relevant witnesses as well as e-mails pertaining to the events in question.

C. *The trial court's ruling*

After GEICO filed a reply and the trial court held a hearing on the motion, the trial court entered an order granting summary judgment in favor of GEICO. In its ruling, the court first addressed Zappala's causes of action for disability discrimination and retaliation under FEHA and CFRA. After outlining the elements of a cause of action for "mental disability discrimination" under FEHA and the parties' arguments with respect to certain of those elements, the court noted that GEICO contended that it had terminated Zappala's employment for insubordination. The court concluded that while Zappala had "cite[d] timing issues and text messages by his supervisors questioning the legitimacy of his condition," these were "insufficient to establish the existence of pretext." The court also ruled that the lack of a "causal connection between [Zappala's] disability and [GEICO's] action" demonstrated that his retaliation causes of action failed. The

6

court further ruled that Zappala's causes of action for failure to provide a reasonable accommodation and failure to engage in the interactive process failed because "[GEICO] decided to terminate [Zappala] before his leave was granted," and "[t]hus, [Zappala's] evidence fails to create a triable issue."

With respect to Zappala's cause of action for hostile work environment, the court ruled, "[Zappala's] characterization of Bond's actions is belied by the evidence." The court further concluded that Zappala's cause of action for failure to prevent harassment and discrimination failed since "[Zappala] is unable to establish his FEHA claims for discrimination, retaliation, or harassment."

With respect to Zappala's cause of action for retaliation for whistleblowing, the court concluded that "[Zappala's] concerns constituted internal personnel matters which are not actionable," "[Zappala's] concerns about future illegality are speculative," and the regulation that Zappala had cited in his opposition did "not address the issue of staffing."

The court additionally determined that Zappala's cause of action for wrongful termination failed because he could not show that GEICO violated FEHA. Finally, the court ruled that Zappala's request for punitive damages failed both because he could not establish the viability of any of his substantive causes of action and because he had not identified any sufficient act of malice, oppression or fraud committed against him.

D. *The trial court's judgment and Zappala's appeal*

The trial court entered a judgment in favor of GEICO, from which Zappala timely appeals.

7

DISCUSSION

*The trial court did not err in granting summary judgment in favor of GEICO*

Zappala claims the trial court erred in granting summary judgment in favor of GEICO.

A. *Governing law and standard of review*

A moving party is entitled to summary judgment when the party establishes that it is entitled to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)  A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of each of his causes of action.  (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

On appeal, we review the trial court's grant of summary judgment de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)  We make " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' " (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.)

" 'On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . "[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues

which have been adequately raised and briefed." [Citation.]' " (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 (*Bains*).)

B. *Retaliation for whistleblowing*

Zappala claims the trial court erred in granting GEICO judgment as a matter of law on his retaliation-for-whistleblowing cause of action under Labor Code section 1102.5.

Labor Code section 1102.5 "prohibits an 'employer' from 'retaliat[ing] against an employee' who blows the whistle on wrongdoing to authorities." (*Brown v. City of Inglewood* (2025) 18 Cal.5th 33, 40–41.) As relevant here, the statute prohibits an employer from retaliating against an employee who reports activity the employee has reasonable cause to believe is unlawful (Lab. Code, § 1102.5, subd. (b)) or who refuses to participate in unlawful activity (*id.*, subd. (c)).[3] "To prevail on a claim under Labor Code section 1102.5, a plaintiff must prove 'that he engaged in protected activity,' such as a disclosure under subdivision (b) or a refusal to participate under

---

[3] Labor Code section 1102.5 provides in relevant part: "(b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

"(c) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

subdivision (c), 'that he was subjected to adverse employment action by his employer, and that there was a causal link between the [protected activity] and the adverse action.' " (*City of Whittier v. Everest National Ins. Co.* (2023) 97 Cal.App.5th 895, 907 (*City of Whittier*).)

"[Labor Code] [s]ection 1102.6 provides the governing framework for the presentation and evaluation of whistleblower retaliation claims brought under [Labor Code] section 1102.5." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718 (*Lawson*).) As an initial burden, the plaintiff must "establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action." (*Ibid.*)

Zappala first contends the trial court erred in granting GEICO judgment as a matter of law on his Labor Code section 1102.5 cause of action because the court "failed to analyze" his claim insofar it was premised on subdivision (b) of the statute. We are not persuaded. The trial court's order granting GEICO summary judgment notes that Zappala "contends that he refused to participate in a quality control staff reduction due to his sincere and reasonable belief regarding the ethical and regulatory implications of reducing staff." Next, the court's order expressly references subdivision (b), noting that "under Labor Code section 1102.5, [subdivision] (b) . . . the relevant inquiry is not whether the conduct 'actually violated,' any specific statute of regulation at the time it was reported but whether the employee reasonably believed that the activity in question was a violation of a statute, rule, or regulation." Further, after noting that "[Zappala's] concerns about future illegality are speculative," and that Zappala had not cited any laws "address[ing] the issue of staffing," the trial court concluded Zappala "did not meet his burden under *Lawson*." Thus, we reject Zappala's contention that

10

"the trial court committed error by granting summary judgment against [him] without analyzing [his] claim for whistleblower retaliation based on Labor Code section 1102.5, [subdivision] (b)."

In any event, even assuming the trial court *had* failed to analyze Zappala's cause of action under Labor Code section 1102.5, subdivision (b), he would not be entitled to reversal absent a showing of prejudicial error. (See *Apex Solutions, Inc. v. Falls Lake National Ins. Co.* (2024) 100 Cal.App.5th 1249, 1257 ["We review the result the trial court reached, not its legal reasoning, and we may affirm on any ground supported by the record, unconstrained by the route the trial court took in getting there."].) We are not persuaded that Zappala has made any such showing.

We recently summarized the law governing whistleblower claims under Labor Code section 1102.5, subdivision (b) in *Contreras v. Green Thumb Produce, Inc.* (Dec. 15, 2025, D085440) ___ Cal.App.5th ___ [2025 Cal.App. Lexis 822] (*Contreras*). As the *Contreras* court explained, " '[T]he protections of [Labor Code] section 1102.5[, subdivision] (b) apply only where the disclosing employee "has reasonable cause to believe that the information discloses a [legal] violation." ' ([*People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 734 (*Kolla's*)].) Accordingly, 'the relevant inquiry is not whether the conduct "actually violated" any specific statute or regulation, but whether the plaintiff "*reasonably believed* that there was a violation." ' (*Killgore v. SpecPro Professional Services, LLC* (9th Cir. 2022) 51 F.4th 973, 988; see also, *Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th 703, 719 [(*Nejadian*)] ['Unlike retaliation under . . . [Labor Code] section 1102.5[, subdivision] (b), in which the employee must show only that he or she *reasonably believed* that there was a violation of a statute, rule, or regulation, [Labor Code] section 1102.5[, subdivision] (c) requires a showing

11

that the activity in question *actually would* result in a violation or noncompliance with a statute, rule, or regulation'].)  [Labor Code] [s]ection 1102.5[, subdivision] (b) requires 'objective reasonableness' (*Kolla's*, at p. 734) and it 'does not protect employees who do not believe[4] or who unreasonably believe that the information they are disclosing shows a violation of the law' (*id.* at p. 731)." (*Contreras*, at pp. **11–12.)  Thus, the *Contreras* court explained that "section 1102.5 may provide relief for an employee who reasonably believed a legal violation occurred despite incorrectly analyzing the relevant law." (*Id.* at p. *13.)

_____

4      In *Vatalaro v. County of Sacramento* (2022) 79 Cal.App.5th 367 (*Vatalaro*), the Court of Appeal noted that the weight of authority suggested that "when [Labor Code] section 1102.5 refers to employees who had 'reasonable cause to believe' that the information they revealed disclosed a violation of the law, the statute in effect refers to employees who 'reasonably believed' that the information they revealed disclosed a violation." (*Id.* at p. 381.)  However, the *Vatalaro* court "hesitate[d]," to endorse this interpretation, since "[a] person . . . may have 'reasonable to cause to believe' that something is true, even if she does not in fact believe it to be true." (*Id.* at p. 382.)

We need not here determine "the outer reach of the statute's 'reasonable cause to believe' language." (*Vatalaro, supra*, 79 Cal.App.5th at p. 382, fn. 1.)  Specifically, we need not determine the persuasiveness of the *Vatalaro* court's suggestion of an alternative interpretation of Labor Code section 1102.5, subdivision (b) or the effect, if any, of the vitality of this interpretation given the *Kolla's* court's statement that the statute does not protect employees "who do not believe" that the information they are disclosing shows a violation of the law. (*Kolla's, supra*, 14 Cal.5th at p. 731.)  That is because irrespective of the issue of whether Labor Code section 1102.5, subdivision (b) mandates that an employee have an *actual* belief that the information they revealed disclosed a violation of the law, Labor Code section 1102.5, subdivision (b) requires, at a minimum, that the employee must have "reasonable cause to believe" (Lab. Code, § 1102.5, subd. (b)) that they are disclosing information showing a legal violation.  For the reasons stated in the text, Zappala had not demonstrated a triable issue of fact on this issue.

12

The *Contreras* court applied this law in concluding that an employee who "mistakenly determined his former employer . . . was violating the Equal Pay Act (EPA; Lab. Code, § 1197.5) by paying him less than other coworkers performing similar duties," could establish a retaliation claim under Labor Code section 1102.5, subdivision (b) notwithstanding that " ' "[t]he [EPA] does not prohibit variations in wages; it prohibits *discriminatory* variations in wages." ' " (*Contreras, supra*, ___ Cal.App.5th at p. ___ [2025 Cal.App. Lexis 822, at p. *1, fn. omitted].) We explained that this was so because there was substantial evidence on which the jury could have determined that the employee had reasonable cause to believe that his employer had violated the EPA. (*Id.* at pp. **15–16.)

In describing this evidence, the *Contreras* court noted that the employee had "research[ed] his legal rights," by "contact[ing] the Labor Commissioner's Office of San Bernardino County," and that a deputy labor commissioner told him that his employer "might be violating the law." (*Contreras, supra*, ___ Cal.App.5th at p. ___ [2025 Cal.App. Lexis 822, at p. *3].) In addition, we observed that "[t]he deputy labor commissioner referred [the employee] to the EPA and told him he could obtain more information about that law on the Labor Commissioner's website." (*Ibid.*) Further, the evidence established that the employee consulted that website, printed out a page from a Frequently Asked Questions (FAQ) page, and brought the printout "with him to work intending to present it to human resources after his shift and to ask for a raise." (*Id.* at pp. **3–4.)

In evaluating this evidence, the *Contreras* court concluded that "[a]lthough the deputy labor commissioner did not make a definitive determination, stating only that [the employer] might have violated the law, it [was] reasonable for a lay person to give that assessment credit."

13

(*Contreras, supra*, ___ Cal.App.5th at p. ___ [2025 Cal.App. Lexis 822, at p. *15].) The *Contreras* court also discussed the FAQ and the employee's testimony pertaining his understanding of the FAQ and concluded that "a lay person with no formal legal training could easily misinterpret the FAQ similarly to [how the employee did], especially when told by a deputy labor commissioner that there was a potential violation." (*Id.* at pp. **16–17.) In light of all this evidence, we concluded that there was sufficient evidence to support the jury's "reasonable cause determination." (*Id.* at pp. **16–17.)

In contrast, in this case, there is no evidence on which a reasonable juror could find that Zappala "engaged in protected activity by complaining about [GEICO's] conduct that he *reasonably believed was illegal* to his supervisors." (Italics added.) While Zappala correctly notes that he raised concerns to his supervisors regarding the staffing reduction proposal, he fails to demonstrate that the trial court erred in determining that none of these complaints revealed that Zappala had reasonable cause to believe that the proposed staffing changes would violate the law.

As the trial court noted, the only law that Zappala cites, California Code of Regulations, title 10, section 2694, does not even pertain to insurance company staffing levels. Instead, the regulation merely specifies the characteristics of a "consumer complaint" to the Department of Insurance that will be "deemed justified."[5] Indeed, since the regulation is merely

---

[5] The regulation provides: "(a) A consumer complaint shall be deemed justified within the meaning of California Insurance Code section 12921.1(b) [governing complaints to Department of Insurance] where it meets any one or more of the following criteria:

"(1) the Department determines that the licensee's act, acts, omission or omissions were in noncompliance with a specific provision or provisions of

14

definitional and does not prohibit *any* conduct on the part of an insurance

company or any other entity, it would be factually and legally impossible for

the California Insurance Code, California Code of Regulations, or other applicable laws and/or regulations;

"(2) the Department determines that the licensee's act, acts, omission or omissions were in contravention of an approved rate filing or filings;

"(3) the Department determines that the licensee's act, acts, omission or omissions were in contravention of the licensee's rules, policies, procedures or guidelines as relates to sales, marketing, advertising, underwriting, rating, claims and/or customer service, including rate manual filings, underwriting guidelines and/or other filings, statements or guidelines either submitted to the Department or to which the Department would have access during a market conduct examination and the Department determines that there was no substantial justification for deviation from such rules, policies, procedures or guidelines on the facts presented. For purposes of this subsection, all time restrictions or requirements for reply, response, or other legally required insurer action, shall be measured as against applicable time restrictions or parameters established in the California Insurance Code, California Code of Regulations, or other applicable laws and/or regulations.

"(4) the Department determines that the licensee's act, acts, omission or omissions were in contravention of, or were otherwise inconsistent with, a provision or provisions of the insurance policy, contract, bond, or other agreement entered into by the relevant parties;

"(5) the Department determines that after receiving a written or documented oral communication related to a claim, benefit underwriting or rating transaction, from a policyholder, insured, applicant, third party claimant, beneficiary, principal, or other party with a legitimate interest in the transaction, where that communication reasonably suggests that a response is expected, the licensee has failed to respond or did not provide a complete response, based on the facts then known by the licensee, within the applicable time restrictions established in the California Insurance Code, California Code of Regulations, other applicable laws and/or regulations or, in the absence of such restrictions, the licensee fails to respond within 15 days. A complete response is defined as one that addresses all issues raised and includes copies of any documentation needed to support the licensee's position.

"(6) the Department determines that the specific facts surrounding the complaint as against an insurer merit remedial action within the authority of the Commissioner." (Cal. Code of Regs, tit. 10, § 2694.)

15

GEICO's staffing change to violate the regulation. Nor does Zappala point to any evidence in the record demonstrating that he undertook an investigation like that undertaken by the employee in *Contreras* on which a jury could rationally find that Zappala reasonably believed GEICO's staffing change would violate the law. Thus, the trial court did not err in concluding, as a matter of law, that Zappala did not have reasonable cause to believe that GEICO's staffing changes would violate this provision. Accordingly, we conclude Zappala is not entitled to reversal on the ground that there was a triable issue of fact as to his claim that GEICO violated Labor Code section 1102.5, subdivision (b). (See *Kolla's, supra*, 14 Cal.5th at p. 731 [section 1102.5, subd. (b) does not protect *unreasonable* beliefs].)

Zappala also appears to assert that the trial court erred in granting GEICO judgment as a matter of law on his Labor Code section 1102.5 cause of action because there is a triable issue of material fact with respect to whether he could prove a violation of *subdivision* (*c*) of the statute. Specifically, Zappala suggests in his brief that his act of "refusing to sign" the memorandum mandating the staffing changes amounted to a refusal to participate in an activity that would result in a violation of law under Labor Code section 1102.5, subdivision (c).

The relevant cause of action in the operative first amended complaint, however, makes no mention of any theory of liability under *subdivision* (*c*) of Labor Code section 1102.5. For example, the operative complaint: (1) does not specifically reference any allegations pertaining to Zappala's refusal to sign the staffing change memorandum; (2) cites only Labor Code section 1102.5 generically; (3) quotes only language from *subdivision (b)* of the statute; and (4) contains numerous allegations that pertain to Labor Code section 1102.5 *subdivision* (*b*). Thus, since the operative complaint does not

16

adequately allege a claim under Labor Code section 1102.5, subdivision (c), Zappala is not entitled to reversal on the ground that GEICO failed to demonstrate that he would not be able to establish a violation of that subdivision of the statute. (See, e.g., *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 ["the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings"].)

In any event, even assuming Zappala had adequately alleged a claim under Labor Code section 1102.5, subdivision (c), he would still not be entitled to reversal. "[A]n employee is protected under subdivision (c) only if the activity in which the employee refuses to participate is *actually* illegal." (*City of Whittier, supra*, 97 Cal.App.5th at p. 914.) To prevail on a claim under this provision, "the employee must identify what specific activity he or she refused to participate in and what specific statute, rule, or regulation would be violated by that activity." (*Nejadian, supra*, 40 Cal.App.5th at p. 719.)

Zappala claims that, by refusing to sign the staffing reduction memorandum, he refused to participate in an activity that "would undoubtedly lead to a violation of Department of Insurance regulations." However, as noted above, the only specific law that he cites, California Code of Regulations, title 10, section 2694, does not pertain to insurance company staffing levels. In short, Zappala provided no theory as to how the activity in which he refused to participate would violate the law. Absent some law making the staffing change *itself* illegal, Zappala's refusal to participate in a staffing reduction on the basis of his belief that it would "lead to" *future* violations is not a legally sufficient basis on which to prove a violation of

17

section 1102.5, subdivision (b). (See *Nejadian, supra*, 40 Cal.App.5th at p. 719 [employee must identify specific activity that the employee refused to undertake and the law that "would be violated *by that activity*," italics added].)

Accordingly, we conclude the trial court properly granted GEICO judgment as a matter of law on Zappala's retaliation-for-whistleblowing cause of action.[6]

C. *Disability discrimination*

Zappala claims that the trial court erred in granting GEICO judgment as a matter of law on his three causes of action related to disability discrimination under FEHA (Gov. Code, § 12900 et seq.): (1) disability discrimination resulting in termination (Gov. Code, § 12940, subd. (a)); (2) failure to accommodate (*id*., subd. (m)); and (3) failure to engage in interactive process (*id*., subd. (n)).

"A prima facie case of disability discrimination under FEHA requires the employee to show he or she (1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to adverse employment action because of the disability. [Citation.] Once the employee establishes his or her prima facie case, 'the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action.' [Citation.] The employee may still defeat the employer's showing with evidence that the stated reason is pretextual, the employer

---

6    In light of our conclusion that Zappala failed to demonstrate that there is a triable issue of fact as to whether he participated in any "protected activities," under Labor Code section 1102.5, we need not consider if there was a triable issue of fact as to whether any such participation "was a contributing factor" to his termination. (*Lawson, supra*, 12 Cal.5th at p. 718.)

acted with discriminatory animus, or other evidence permitting a reasonable trier of fact to conclude the employer intentionally discriminated." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 378.)

To establish a failure to accommodate cause of action under FEHA, Zappala is required to show (1) he had a disability covered by FEHA; (2) he can perform the essential functions of the position; and (3) GEICO failed reasonably to accommodate his disability. (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1107.)

" 'The "interactive process" required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively.' " (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013.) A trial court properly grants a defendant judgment as a matter of law on a cause of action for failure to engage in the interactive process under FEHA where the plaintiff "fail[s] to identify a triable material fact supporting her claim of a disability within the meaning of FEHA." (*Allos v. Poway Unified School Dist.* (2025) 112 Cal.App.5th 822, 838.)

Since all three disability-related causes of action require proof of a disability, we consider that element first. Zappala notes that Government Code section 12926 defines "mental disability," as including "[h]aving any mental or psychological disorder or condition, such as intellectual disability, organic brain syndrome, emotional or mental illness, or specific learning disabilities, that limits a major life activity." (*Id.*, subd. (j)(1).) Zappala then asserts, without citation to evidence in the record, "A reasonable juror could find that [Zappala's] anxiety disorder pre-existed July 2022 and the stress caused by [GEICO]." Such assertion is not a sufficient basis on which to establish a triable issue of fact. (*Bains, supra*, 172 Cal.App.4th at p. 455 ["it

19

is the appellant's responsibility . . . to point out the triable issues the appellant claims are present by citation to the record"].) Given Zappala's failure to identify any evidence in the record demonstrating that he could establish that he had a disability, Zappala is not entitled to reversal of the trial court's judgment on any of his three disability-related causes of action.

Further, we are not persuaded by Zappala's contention that his "[d]isability discrimination . . . rise and fall on whether there is a triable issue of material fact as to the date of [GEICO's] decision to terminate [his] employment." The trial court's summary judgment order also referred to evidence that GEICO terminated his employment "for insubordination" and the trial court concluded there was "insufficient evidence of pretext." In addition, in discussing Zappala's cause of action for retaliation for seeking medical leave under FEHA, the trial court stated, "For the reasons set forth with respect to disability discrimination, [Zappala] failed to establish the existence of a causal connection between his disability and [GEICO's] action." Zappala fails to address any of these reasons in his argument in favor of reversal on his disability-related causes of action.

Moreover, our own independent review of the record reveals no evidence on which a reasonable trier of fact could find that that GEICO terminated his employment based on a disability, failed to reasonably accommodate him, or failed to engage in the interactive process. Even assuming that a reasonable trier of fact could find that the final decision to terminate Zappala's employment had not occurred before he sought medical leave, the undisputed evidence established that GEICO had already begun the process of terminating Zappala for insubordination, and there is no evidence in the record on which a reasonable juror could find that any alleged disability was the basis of GEICO's final termination decision.

Accordingly, we conclude that Zappala has not demonstrated a basis for reversing the trial court's order granting GEICO judgment as a matter of law on Zappala's disability-related causes of action.

D. *Retaliation for seeking medical leave*

Zappala claims that the trial court erred in granting GEICO judgment as a matter of law on his causes of action for retaliation for seeking medical leave under FEHA (Gov. Code, § 12940, subd. (h)) and CFRA (*id.*, § 12945.2, subd. (k).)

In order to prove his cause of action for retaliation for seeking medical leave under FEHA, Zappala is required to prove that a causal link existed between his request for leave and GEICO's termination of his employment. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 [stating that, among other elements, a plaintiff seeking to establish a prima facie case for retaliation under FEHA must show "a causal link existed between the protected activity and the employer's action"].)  Similarly, to prove his cause of action for retaliation under CFRA, Zappala is required to prove that he was terminated " 'because of [his] exercise of [his] right to CFRA [leave].' " (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 248.)

The trial court expressly granted GEICO judgment as a matter of law on both retaliation causes of action because of Zappala's failure to establish a "causal connection" between his seeking leave and the termination of his employment.  Nevertheless, Zappala does not address the causation element of his FEHA and CFRA retaliation causes of action in any manner in his argument on appeal.  Thus, he necessarily fails to point to any evidence in the record demonstrating error.  (*Bains, supra*, 172 Cal.App.4th at p. 455 [appellant from a summary judgment ruling must "point out the triable

21

issues the appellant claims are present by citation to the record and any supporting authority"].)

Accordingly, we conclude that Zappala had not demonstrated that the trial court erred in granting GEICO judgment as a matter of law on Zappala's causes of action for retaliation for seeking medical leave.

E. *Hostile work environment harassment*

Zappala claims that the trial court erred in granting GEICO judgment as a matter of law on his cause of action for hostile work environment harassment. Neither of the conclusory arguments that Zappala presents in support of this claim are persuasive.

First, after noting that the trial court concluded that Zappala's characterization of Bond's actions were "belied by the evidence," Zappala asserts that the trial court improperly weighed the evidence and disregarded his declaration. Zappala, however, fails to discuss or explain how his declaration demonstrates error. Absent affirmative indications to the contrary, we must presume the trial court properly considered the evidence and properly concluded that no triable issue of material fact existed. (*Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1230 ["We approach a summary judgment appeal, as with any appeal, with the presumption the appealed judgment is correct."].)

Next, Zappala notes that Government Code section 12923, subdivision (e)[7] provides in relevant part, "Harassment cases are rarely appropriate for disposition on summary judgment." Beyond, however, asserting that "this case . . . raises multiple triable issues of material fact," Zappala fails to

---

7    Zappala's brief references subdivision (d) of Government Code section 12923, but it is clear that he intended to quote subdivision (e), which contains the quoted language.

22

provide any argument as to how this principle applies with respect to this case. Zappala's assertion that this case presents triable issues of fact, without citation to the record, does not demonstrate error.[8]

## DISPOSITION

The judgment is affirmed. GEICO is entitled to its costs on appeal.


BUCHANAN, J.

WE CONCUR:


DO, Acting P. J.


CASTILLO, J.

---

[8] With respect to each of his arguments for reversing the trial court's judgment as a matter of law with respect to his causes of action for retaliation for whistleblowing, disability discrimination, retaliation for seeking medical leave, and hostile work environment harassment, Zappala also contends that these arguments require reversal of the judgment on his claim for wrongful termination and/or his claim failure to protect against harassment as well as his request for punitive damages. Even assuming these bootstrapping and conclusory contentions are not forfeited for lack of adequate citation to legal authority or meaningful argument (see, e.g., *Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 854), they fail in light of our rejection of the arguments on which they are premised in the text above.