Filed 4/24/26  Mielke v. The Regents of the U. of Cal. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CLINTON MIELKE,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,<br><br>     Defendants and Respondents. | A170721<br><br>(Alameda County<br>Super. Ct. No. RG20081227) |

Plaintiff Clinton Mielke, Ph.D., a data scientist, sued his former employer, the Regents of the University of California (the Regents), and three individual defendants (Michael Blum, M.D.; Rachael Callcut, M.D.; and Robert Rogers, Ph.D.), alleging he was terminated in retaliation for whistleblowing activities.  The trial court granted summary judgment for defendants, finding Mielke could not establish his protected activity was a contributing factor in the termination decision.

On appeal, Mielke challenges the court's summary judgment ruling, as well as its rulings denying Mielke's request for a continuance of the summary judgment hearing, denying his motion for a new trial, and granting only limited relief when Mielke sought to vacate the summary judgment order.  Applying de novo review, we conclude the court erred in granting summary

1

judgment, and we will reverse the judgment.  We therefore need not address Mielke's appellate challenges to the court's rulings on his motions for a continuance, for a new trial, and to vacate the summary judgment order.

## I. BACKGROUND

In summarizing the background of this appeal, we take the relevant facts from the record that was before the trial court when it ruled on defendants' summary judgment motion.  (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1034–1035.)  We grant defendants' motion to strike the declaration that Mielke submitted in this court, in which he seeks to present additional evidence on appeal, and we will disregard the portions of Mielke's appellate briefs that rely on that declaration.  We also do not consider evidence that Mielke belatedly presented in the trial court (such as with his motion for new trial), as that evidence was not part of the record on which the court based its summary judgment ruling.

### A. *Mielke's Employment and Termination*

Mielke began working for the Center for Digital Health Innovation (CDHI) at the University of California, San Francisco (UCSF) in the summer of 2017.  CDHI builds algorithms that partner companies license from the university.  Mielke was supervised by Callcut, who served as CDHI's director of data science and advanced analytics and was also an associate professor of surgery.  Mielke's second-level supervisor was Blum, a cardiologist who was UCSF's chief digital transformation officer and associate vice chancellor for informatics.  Mielke also worked with Rogers, a physicist who was not a university employee but who worked as a consultant beginning in June 2018 through a contract with the university.

Callcut and Blum state that, in early 2019, they believed Mielke's work performance was inconsistent and his behavior inappropriate.  They received complaints that Mielke was not forthcoming about the status of his work,

2

made insulting comments about coworkers, and discussed his bodily functions.

In mid-February 2019, Callcut met with Mielke and discussed his performance evaluation for his work in 2018. The evaluation was generally positive, although with ratings lower than those received by Mielke's peers. Callcut told Mielke there was a perception he was withholding work and was not a collaborative team member.

According to Callcut, by March 2019, Mielke had become more disruptive and unreliable. Callcut contacted the university's human resources (HR) department and received guidance about initiating a disciplinary process. On March 18, 2019, Callcut met with Mielke and counseled him about his performance, including productivity expectations, workplace behavior and teamwork, and Mielke's perception he was not receiving appropriate credit for his work.

Callcut states that Mielke became increasingly disruptive after the March 18, 2019 meeting. On March 22, 2019, Callcut and Blum met with Mielke, counseled him about performance and behavior issues, and issued him a written letter of warning.

The parties state that, on March 24, 2019, Mielke submitted a written "whistleblower" complaint to a designated university official. As described by the parties, Mielke's complaint alleged a corporate partner, General Electric (GE), had been misled about the status of a project on which CDHI was working. Mielke's written complaint about this alleged conduct is not in the record that was before the trial court when it ruled on the summary judgment motion, but defendants stated in their motion that they accepted for purposes of the motion that Mielke engaged in protected whistleblowing activity. As we discuss below, Mielke's supervisors, Callcut and Blum,

3

declared in support of summary judgment that they were not aware of Mielke's protected activity at this time.

On May 8, 2019, Mielke was placed on paid investigatory leave. According to Callcut, Mielke's negative behaviors, which had briefly improved after the March 22, 2019 meeting, had since continued. Mielke was unproductive and was also disrupting the ability of others to complete their work.

On July 22, 2019, Blum and Callcut held an investigatory meeting with Mielke to discuss his behavior and work performance issues. Callcut states that, after this meeting, she decided to recommend that Mielke be terminated. Blum agreed with the decision. After working with HR to compile the necessary documentation, Callcut issued a Notice of Intent to Terminate (NOIT) to Mielke on September 16, 2019. In May 2020, following completion of the *Skelly* review process (in which the review officer found the termination decision was well supported), Blum sent Mielke a notice of termination.

## B. *Procedural Background*

### 1. Mielke's Lawsuit

Mielke filed the present action in November 2020, asserting a cause of action for whistleblower retaliation under Government Code section 8547.10. Mielke initially named as defendants the Regents, Blum, and Callcut; he later added Rogers as a defendant. Mielke alleged he suffered retaliation because he identified potential fraud connected with the university's GE contract, specifically that CDHI accepted funding from GE, failed to report Mielke's work as progress, and instead falsely reported other work as the first results on the project. Mielke alleged that on or about March 6, 2019, his colleague Scott Hammond told him that a prototype developed by Mielke

4

was shown to GE competitor Philips to solicit an alternate funding source. According to Mielke, Hammond was fired the next day.

Mielke alleged that, on March 13, 2019, he told Rogers that he had been discussing suspected "foul play" with someone in HR, and was debating whether he should "blow the whistle." Mielke alleged this conversation with Rogers was protected whistleblowing activity, as was his March 24, 2019 written "whistleblower report." He alleged all defendants knew about his protected activity before he was terminated. Mielke alleged that, as a result of his whistleblowing, he was subjected to disciplinary meetings, investigatory leave, a criminal investigation based on false allegations about images on his laptop (after which he was cleared of wrongdoing), and, ultimately, termination.

## 2. Defendants' Summary Judgment Motion

In May 2022, defendants moved for summary judgment, but they later took the motion off calendar. In August 2023, defendants filed another summary judgment motion that, like the first one, was supported by declarations from Blum, Callcut, and Rogers. In the motion, defendants argued Blum and Callcut were not aware of any whistleblower activity by Mielke before they decided to terminate him, and they had no motive to retaliate against him. Defendants also contended that, even if they had been aware of Mielke's protected activity, there were legitimate, independent reasons for the termination. As for Rogers, the motion argued he served only as a consultant at the university—not an employee—and had no authority to discipline or terminate Mielke.

In his October 25, 2023 opposition to the motion, Mielke asked the court to continue the summary judgment hearing so he could complete Callcut's deposition and then depose Blum and Rogers. Mielke also said he was trying to reschedule a deposition for third party witness Hammond, who

5

refused to proceed without counsel at his originally scheduled deposition. Mielke also argued briefly that summary judgment was not appropriate on the merits. In an excerpt of Mielke's deposition filed with his opposition, Mielke stated he considered Rogers to be one of his supervisors.

On November 9, 2023, the scheduled date for the summary judgment hearing (and three days after the court had issued a tentative ruling denying a continuance and granting summary judgment), Mielke's counsel filed a supplemental declaration, attaching documents. At the hearing, Mielke and his counsel did not appear (as counsel apparently did not notice the court's tentative ruling had changed the hearing time from 3:00 p.m. to 10:00 a.m.). The court took the motion under submission and, just after noon on November 9, issued an order adopting the tentative ruling.

### 3. Subsequent Motions and the Second Summary Judgment Hearing

Mielke moved for a new trial on several grounds, and the court denied the motion on January 22, 2024.

Mielke then moved to vacate the summary judgment order under Code of Civil Procedure[1] section 473, subdivision (b), arguing he had shown mistake or other grounds for relief. The court granted the motion based on counsel's mistake in overlooking the hearing time change for the summary judgment motion. The court vacated the order granting summary judgment and set a hearing on the motion to allow counsel to present argument. The court ruled it would not consider further briefing or evidence.

After a new hearing on the summary judgment motion, the court again denied a continuance and granted summary judgment. The court entered judgment for defendants, and Mielke appealed.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

6

## II. DISCUSSION

### A. *Legal Standards*

Summary judgment is warranted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) " 'We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards.' " (*Apex Solutions, Inc. v. Falls Lake National Ins. Co.* (2024) 100 Cal.App.5th 1249, 1256.) A defendant moving for summary judgment may meet its initial burden of production by showing "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action"; the burden then shifts to the plaintiff to show a triable issue of material fact exists. (§ 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) We consider all evidence in the light most favorable to the nonmoving party. (*Id.* at p. 843.)

The framework for analyzing Mielke's whistleblower retaliation claim is set forth in Government Code section 8547.10, subdivision (e), which states in relevant part: "In any civil action or administrative proceeding, once it has been demonstrated by a preponderance of the evidence that an activity protected by this article was a contributing factor in the alleged retaliation against a former, current, or prospective employee, the burden of proof shall be on the supervisor, manager, or appointing power to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in protected disclosures or refused an illegal order." (Gov. Code, § 8547.10, subd. (e); *Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 916 (*Scheer*).)

7

In *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703 (*Lawson*), the California Supreme Court applied a similarly worded whistleblower statute (Lab. Code, § 1102.6)[2] and explained that the governing framework involves two steps. "First, it places the burden on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action. The plaintiff need not satisfy *McDonnell Douglas*[3] in order to discharge this burden.[4] Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for

---

[2] Labor Code section 1102.6 states: "In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5."

[3] *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*). Under the three-step *McDonnell Douglas* approach, "the employee must establish a prima facie case of unlawful discrimination or retaliation. (*McDonnell Douglas*, at p. 802.) Next, the employer bears the burden of articulating a legitimate reason for taking the challenged adverse employment action. (*Ibid.*) Finally, the burden shifts back to the employee to demonstrate that the employer's proffered legitimate reason is a pretext for discrimination or retaliation. (*Id.* at p. 804.)" (*Lawson, supra*, 12 Cal.5th at p. 708.)

[4] In particular, a plaintiff proceeding under this framework "does not need to show that the employer's nonretaliatory reason was pretextual. Even if the employer had a genuine, nonretaliatory reason for its adverse action, the plaintiff still carries the burden assigned by statute if it is shown that the employer also had at least one retaliatory reason that was a contributing factor in the action." (*Lawson, supra*, 12 Cal.5th at p. 716.)

legitimate, independent reasons even had the plaintiff not engaged in protected activity." (*Lawson,* at p. 718; see *Scheer, supra,* 76 Cal.App.5th at pp. 915–916 ["Guided by *Lawson* and applying its reasoning, we conclude that Government Code section 8547.10, subdivision (e), rather than *McDonnell Douglas*, provides the relevant framework for analyzing claims under Government Code section 8547.10."].)

## B. *The "Contributing Factor" Element of Mielke's Claim*

As outlined above, an essential element of Mielke's claim for whistleblower retaliation (the sole claim in his complaint) is proof that retaliation for his protected activities was a "contributing factor in a contested employment action." (*Lawson*, *supra*, 12 Cal.5th at p. 718; see *Scheer, supra,* 76 Cal.App.5th at pp. 915–916.) In granting summary judgment, the trial court found Mielke could not establish this element because the undisputed facts "demonstrate that at the time Defendants Callcut and Blum initiated termination proceedings against [Mielke], they did not know [Mielke] had raised any whistleblower concerns."

We read the record differently. While the issue is close and we are mindful that the trial court likely did not have the time for deliberation and reflection that we have had, in the end we are persuaded that the governing burden of proof framework—which is daunting for the defense at this stage of the proceeding—decides the issue. We conclude the defendants did not meet their initial burden on summary judgment to show that the "contributing factor" (*Lawson*, *supra*, 12 Cal.5th at p. 718) element of Mielke's retaliation claim (i.e., the causation element) "cannot be established" (§ 437c, subd. (p)(2)).[5] As Mielke argued at the summary judgment hearing in the

---

[5] In moving for summary judgment, defendants focused on this causation element of Mielke's claim. Defendants assumed for purposes of the summary judgment motion that Mielke engaged in protected whistleblowing

trial court and as he points out in his appellate briefing, the evidence submitted by defendants on this point does not establish that, at all relevant points, they lacked knowledge of his activities.

Defendants assert in their separate statement (Fact No. 23) that, at all times up to and including when they decided to terminate Mielke's employment, Callcut and Blum did not know of Mielke's whistleblowing activities. Fact No. 23, citing to Callcut's and Blum's declarations, states: "At the time of the Letter of Warning, meetings with [Mielke], investigatory leave, and when Drs. Callcut and Blum decided to terminate his employment, they did not know that [Mielke] had raised any whistleblower concerns. The first time they learned of his whistleblower claims was after they decided to issue him the NOIT."

But Callcut's declaration does not state she was unaware throughout this period. Instead, Callcut's declaration states: "At the time of the Letter of Warning, meetings with Mielke, and [the May 2019] investigatory leave notice, I did not know that Mielke had raised any whistleblower concerns." Callcut does not state she remained unaware at the time the NOIT was issued in September 2019. And Callcut states in her declaration that it was after the July 22, 2019 investigatory meeting that she decided to recommend that Mielke's employment be terminated. Blum agreed with the decision. Accordingly, as to at least one "contested employment action" (*Lawson*, *supra*, 12 Cal.5th at p. 718), i.e., Mielke's termination, defendants' evidence does not establish they lacked knowledge of his whistleblowing when that employment

---

activity. In their appellate brief, defendants state this concession encompasses the March 13 and 24, 2019 whistleblowing acts that Mielke alleged in his complaint. Defendants also agree Mielke's placement on investigatory leave and his later termination are adverse employment actions.

10

action was decided on and taken. Defendants were not entitled to summary judgment on this ground alone.[6]

We also note that, in addition to the March 13 and 24, 2019 whistleblowing acts discussed above, Mielke argues on appeal that he made protected disclosures in or prior to the March 18, 2019 meeting with Callcut, disclosures that are reflected in an e-mail that Callcut sent on that date to HR. The e-mail, which is attached to Callcut's declaration in support of summary judgment (and is described as a "summary" of the March 18 meeting), includes statements that (1) Mielke had responded to requests about the status of his projects by stating "his perception that the project was completed a year prior, that he was being unfairly asked to produce something with no notice, that we ignored his project for the last year, and he would not do what was asked of him"; (2) Callcut acknowledged in the e-mail that there were "some delays in the project due to a faculty member relocating to another University . . . ."; (3) Mielke was dissatisfied about not receiving the credit he felt he deserved, and he "ha[d] been overheard stating he will approach our commercial clients himself to show them his work"; and (4) when Callcut "reminded" Mielke about expectations for professional and respectful conduct in the workplace, Mielke "responded by trying to state that 'people talk' and he is being identified as the 'fall guy' because our client is not happy with us."

---

[6] As Mielke acknowledges, Blum's declaration (unlike Callcut's) states he did not learn of Mielke's whistleblower concerns until "after [Mielke] was provided the NOIT." But since defendants' evidence does not show that Callcut (who was Mielke's immediate supervisor and who recommended his termination) was unaware of Mielke's protected activity, defendants did not establish that the protected activity was not a "contributing factor" (*Lawson, supra,* 12 Cal.5th at p. 718) in the termination decision.

11

As Mielke suggests in his appellate briefing, some of the statements that Callcut recounted in the March 18 e-mail may constitute protected disclosures in that they reflect Mielke's allegations of, or his intent to disclose, what he believed to be improper governmental activity, i.e., that GE had been misled about the status of a project on which CDHI was working. (See Gov. Code, § 8547.2, subds. (c)(1)(C), (c)(2), (e)(1).) And there is close temporal proximity between the March 18 e-mail and the March 22, 2019 meeting that Callcut and Blum held with Mielke, in which they counseled him about performance and behavior issues and issued him a written letter of warning.

We need not determine definitively, however, whether the specific statements referred to in the March 18 e-mail are protected disclosures. Whether or not those statements should be considered protected activity (along with the conduct that defendants concede was protected, i.e., Mielke's March 13 conversation with Rogers and the March 24 formal whistleblower complaint), we have concluded above that defendants did not establish that, when they decided to terminate Mielke, they lacked knowledge of his protected activity.[7] Hence the bottom line: Defendants did not show that

---

[7] We also note Mielke did not rely on the March 18 e-mail in opposing summary judgment, so the arguments he now makes about that e-mail were not highlighted for the trial court. At oral argument in this court, Mielke's appellate counsel was asked whether Mielke relied on the March 18 e-mail in his opposition to summary judgment. Counsel stated Mielke did not rely on the e-mail in his opposition but raised it at oral argument. But after reviewing the transcript of the trial court's summary judgment hearings (i.e., the first hearing where Mielke's trial counsel did not appear, and the second hearing, which the court held after vacating the initial summary judgment order to allow counsel to argue the motion), it appears the March 18 e-mail was not raised. (At the second hearing, Mielke's trial counsel discussed a different e-mail that was sent in July 2019.) Regardless of what Mielke relied on, however, the defendants still had the initial burden to show that

12

Mielke cannot establish his protected activity was a contributing factor in defendants' decision to terminate him.

## C. *The Same Decision Defense*

As noted, under the law applicable to Mielke's whistleblower retaliation claim, if a plaintiff shows retaliation for protected activity was a contributing factor in a contested employment action, "the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." (*Lawson,* 12 Cal.5th at p. 718; see Gov. Code, § 8547.10, subd. (e); *Scheer, supra,* 76 Cal.App.5th at pp. 915–916.) Defendants contend they are entitled to summary judgment because the undisputed evidence shows they would have terminated Mielke based on poor performance and disruptive behavior, regardless of his whistleblowing activity.

In its initial summary judgment order, the trial court did not reach this question, having concluded Mielke could not establish the "contributing factor" element of his cause of action. In its second order granting summary judgment (entered after the court vacated the initial order and held a new hearing on the motion), the court again concluded Mielke could not show his protected activity was a contributing factor in his termination. The court then stated in a footnote that, even if it had considered two documents attached to an untimely declaration submitted by Mielke's trial counsel on the date of the first summary judgment hearing, "the Court would have reached the same conclusion. The two documents do not create a triable

---

the "contributing factor" (*Lawson*, *supra*, 12 Cal.5th at p. 718) element of Mielke's retaliation claim (i.e., the causation element) "cannot be established" (§ 437c, subd. (p)(2)), as we have emphasized.

13

issue of fact that Defendants had a legitimate, independent reason for terminating [Mielke's] employment."

The parties debate whether the trial court's brief footnote statement accurately describes the "same decision" defense available to a defendant in this context. We need not resolve this point. On de novo review, we conclude defendants did not meet their initial burden to show the defense applied. (§ 437c, subd. (p)(2).)

The declarations submitted by Callcut and Blum in support of summary judgment do contain language on this point. Callcut states: "The disciplinary actions we took were based entirely on our perceptions of Mielke's behavior and performance and multiple employee[s'] complaints about him. Those actions were, and would have been, taken regardless of any whistleblower concerns he raised." Blum's declaration includes a substantially similar statement. And as defendants outline, there was evidence of Mielke's performance and behavioral problems, which Callcut and Blum observed or received information about.

We note, however, that defendants did not highlight the above declaration statements by Callcut and Blum in their separate statement of facts, and they did not present these or similar assertions as undisputed facts in the separate statement for Mielke to respond to and for the trial court to evaluate. (§ 437c, subd. (b)(1) [moving party's separate statement must "set[] forth plainly and concisely all material facts that the moving party contends are undisputed"].) In addition, the declaration statements (which were offered in conjunction with statements *denying* knowledge of Mielke's protected activity), do not address the precise standard applicable at the second and final step of the *Lawson* framework. The declarations do not state that, *if* retaliation for protected activity *was* a contributing factor in the

14

termination decision, the defendants nonetheless would have made the same decision because of legitimate, independent reasons. (*Lawson,* 12 Cal.5th at p. 718; see Gov. Code, § 8547.10, subd. (e); *Scheer, supra,* 76 Cal.App.5th at pp. 915–916.)

Even if Callcut's and Blum's declaration statements had more precisely addressed the applicable inquiry about whether their decision would have been the same *despite* the presence of retaliation as a "contributing factor" (*Lawson,* 12 Cal.5th at p. 718), and even if the trial court had reached and squarely addressed the same decision defense, the court would not have been obligated to conclude defendants were entitled to summary judgment on this point. Although a moving party's uncontroverted declarations generally must be accepted as true for summary judgment purposes (§ 437c, subd. (e); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025), ¶ 10:317), there is an exception to that rule when the declarant is the sole witness to a fact or testifies as to his or her state of mind (§ 437c, subd. (e); *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 417). In that circumstance, the trial court has discretion whether to grant the motion based on such declarations. (§ 437c, subd. (e); *Kojababian,* at p. 417.) The trial court here (had it squarely reached this question) would not have been obligated to grant summary judgment based on Callcut's and Blum's statements about how and why they reached their decisions.

Finally, turning from Callcut's and Blum's statements to the underlying evidence of Mielke's performance and behavioral problems, the summary judgment record shows (contrary to defendants' suggestion) that Mielke did dispute some of the evidence on this point. In part, he pointed to his "positive" February 2019 performance evaluation, and, relying on his own deposition testimony and excerpts from the first day of Callcut's deposition,

15

he disputed defendants' characterization of some aspects of his alleged performance deficits and disruptive behavior.[8]

In sum, while there was evidence of legitimate reasons supporting Mielke's termination, the evidence was partially disputed, and in any event, the existence of legitimate reasons does not establish a "complete defense" (§ 437c, subd. (p)(2)) to Mielke's cause of action for whistleblower retaliation. As noted, to establish the same decision defense that is at issue here, defendants would need to show by clear and convincing evidence that, due to these legitimate reasons, they would have terminated Mielke even if he had not engaged in protected activity.

## D. *Defendant Rogers*

Apart from the above issues relating to the reasons for Mielke's termination, defendants sought summary judgment for defendant Rogers on the ground he was only a consultant at the university (rather than an employee) and had no authority to discipline or terminate Mielke. The trial court, having concluded Mielke could not establish his whistleblower retaliation claim (and thus all defendants were entitled to summary judgment), did not address whether Rogers was entitled to summary judgment on this additional ground.

On appeal, the parties address this issue briefly and somewhat indirectly (in connection with an argument by Mielke that the trial court

---

[8] Mielke also relied on his verified complaint to dispute some facts in the separate statement. But "[i]t is generally understood, for instance, that a party cannot rely on the allegations of his own pleadings, even if verified, to make or supplement the evidentiary showing required in the summary judgment context." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7.) The trial court, noting this principle, stated it did not consider Mielke's complaint in determining whether a material fact was disputed.

erred procedurally by not adequately explaining its decision to enter summary judgment for Rogers).  Given this procedural posture and the limited appellate briefing on the question, we decline to determine in the first instance whether Rogers is entitled to summary judgment on the ground he was not a university employee and lacked authority to discipline or terminate Mielke.  Our reversal of summary judgment is without prejudice to further proceedings on this question in the trial court.

### III. DISPOSITION

The judgment and the order granting summary judgment are reversed. The case is remanded for further proceedings consistent with this opinion. Mielke shall recover his costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

17